**UNITED STATES of America,**
**Appellee,**

**v.**

**Earl Kill SMITH, Defendant-Appellant,**
**No. 382, Docket 24923.**

United States Court of Appeals
Second Circuit.

Submitted June 2, 1958.

Decided July 24, 1958.

Earl Kill Smith, pro se.

Mark F. Hughes, Jr., Asst. U. S. Atty. for Southern District of New York, New

York City (Paul W. Williams, U. S. Atty., for Southern District of New York), New York City, for appellee.

Before HINCKS, PICKETT and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

The appellant, under service of sentence in the federal penitentiary in Alcatraz, California, by motion filed July 9, 1957 in the United States District Court for the Southern District of New York, in which he had been convicted of bank robbery, sought a writ in the nature of a writ of error *coram nobis* to examine into grounds dehors the trial record upon which he contends his conviction should be vacated, citing as procedural authority for his motion United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. The motion was dismissed on the record below without a hearing. By another panel of the court a motion for leave to appeal *in forma pauperis* was granted since the court doubted that the appeal should be classified as frivolous. But the court refused to assign counsel saying: "It appearing that the defendant pleaded guilty when represented by competent counsel, it would be an imposition on the Bar to assign another lawyer to attack the plea." [1]

In his motion the appellant alleged that after indictment for bank robbery, in April 1955 while awaiting trial on a plea of not guilty, he was interviewed by two F. B. I. agents in the Federal Courthouse who refused him contact with counsel and held him incommunicado. His motion further recited: "that they tried to implicate me in a bank robbery case; they showed me papers saying they had proof to connect me with the crime; that I denied such guilt; that 'finally' they threatened to put my child in an orphan home, and arrest my common law wife to force me to say I was guilty; that they further threatened me by saying that unless I pleaded guilty they

would get a conviction anyway and tell the judge to give me a 25 year consecutive term in addition to the sentence I already had. Finally they broke my resistance and I made statements in regard to a crime of which I knew nothing; that the F. B. I. agents told me what to say and do when I went to Court, which I did, i. e., waive my rights and plead guilty; that the judge imposed a 20 year term; that I pleaded guilty and waived my rights solely because of the threats and promises and fear caused by the F. B. I. *Wherefore,* may this Court hold a hearing forthwith to determine this factual issue which was unknown to the Court at time of trial. May a writ of habeas corpus ad testificandum issue for the production of defendant before this Court on July 22, 1957 to support the allegation of this motion."

In opposition to the motion were filed affidavits of Assistant United States Attorneys, the F. B. I. agents who had interviewed the appellant, and a Supervisor of the Federal Detention Headquarters who flatly denied the appellant's assertions of threats or coercion.

The court records showed that prior to arraignment a member of the staff of the New York Legal Aid Society had been assigned to represent the appellant; that while so represented the appellant had on April 21, 1955 pleaded not guilty; and that subsequently, on May 2, 1955, a member of the Legal Aid staff informed the court of a change of plea and thereupon in open court with the appellant at the bar the following transpired.

"The Court: You want to change your plea from not guilty and plead guilty and you know what you are doing and you have had an opportunity to talk with your attorney?

"The Defendant Smith: Yes." Whereupon the indictment was read and the following transpired.

---

[1]. Such has been the ruling of this court in cases in which the applicable law seems plain. United States ex rel. Tier-

ney v. Richmond, 2 Cir., 245 F.2d 222; United States v. Ballentine, 2 Cir., 245 F.2d 223.

"The Clerk: Mr. Smith, do you understand that?

"Defendant Smith: Yes.

"The Clerk: Do you wish to change your plea of not guilty to guilty?

"Defendant Smith: Yes."

The Government's papers in opposition to the motion also included an affidavit by the appellant's counsel, an experienced member of the staff of the Legal Aid Society who was with him at the change of plea, saying that "Before they changed their pleas, I conferred with them as to the facts of the case and as to the consequences of their plea of guilty. I also represented them on the sentence. I would not have participated in the plea of guilty if I had any reason to believe that it was not the considered, fully advised, and entirely voluntary act of the defendant."

On August 3, 1955 a sentence of twenty years was imposed to run concurrently with sentences of twenty-five years for another bank robbery and auto theft in Maryland which had been imposed by the United States District Court for the District of Maryland, also upon a plea of guilty, which was then in process of service.

It is by no means clear that the alleged "threats," even if made, could have frightened the appellant into a false plea of guilty. Within a few months he had had the experience of a 25-year sentence on a plea of guilty in the Maryland court. The threat of his wife's arrest does not mean much unless she would otherwise have been at liberty and a Government affidavit states that she had been arrested four months previously as an accomplice in the bank robbery. When the appellant had recently begun a 25-year sentence and his wife had been arrested, it would seem that neither a plea of guilty nor one of not guilty could serve to save his son from an orphanage. That he was concerned by the possibility of a consecutive sentence seems scarcely likely when he had just begun a 25 year term. Moreover, even if F. B. I. agents did say

they would "tell the judge to give me a 25 year consecutive term" it would be naive to think he actually believed that F. B. I. agents had such power over a federal judge. As Judge Hand said in United States v. Paglia, 2 Cir., 190 F.2d 445, 448, "If he chose to rely upon representations of those who had no power to commit the prosecutor, he took the same chances that anyone does who does not ascertain whether his promisor has the power to speak for another." Moreover, in this case the appellant, unlike Paglia, does not claim that his plea was induced by a promise that was broken; his plea of guilty was followed by sentence for a concurrent term.

■■ However, we do not rely on extrinsic facts recited only in the government's affidavits: the controlling fact here is the plea of guilty in May 1955 as attested by the court record followed by the sentence on the plea in the following August at which so far as appears the defendant did not challenge his guilt. His admissions made on such solemn occasions as arraignment and sentence in open court in the presence of his counsel and the judge are more trustworthy than the assertions now made by motion two years later in Alcatraz, at least in the absence of credible and independent evidence showing some infirmity in the plea. The All-Writs statute, 28 U.S.C.A. § 1651 (a), which the appellant invokes, does not require that every applicant is entitled to testify orally in support of his motion *for the issue* of the writ. With nothing in the motion papers pointing to independent evidence showing that the appellant's present assertions are more reliable than his former solemn admissions given under all the safeguards of the law, the judge below rightly concluded that the appellant should not be brought across the continent to testify and that his motion for the writ should be dismissed. United States v. Page, 2 Cir., 229 F.2d 91, 92; United States v. Rosenberg, 2 Cir., 200 F.2d 666, 668, certiorari denied 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384; United States v. Pisciotta, 2 Cir., 199 F. 2d 603, 606; Meredith v. United States, 4

Cir., 208 F.2d 680, 682; Tabor v. United States, 4 Cir., 203 F.2d 948, certiorari denied 345 U.S. 1001, 73 S.Ct. 1148, 97 L. Ed. 1407; Gordon v. United States, 5 Cir., 216 F.2d 495, 498; Young v. United States, 8 Cir., 228 F.2d 693, 694; Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670, certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002. Cf. United States v. Hardy, 2 Cir., 252 F.2d 780, certiorari denied 356 U.S. 944, 78 S.Ct. 791, 2 L.Ed.2d 819, affirming D.C., 159 F.Supp. 208. The holding of United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, is not to the contrary. There the movant had not already placed on the record of the court a solemn admission in direct conflict with the assertion on which his motion was based.

Affirmed.