UNITED STATES of America,

v.

Anthony NAPOLITANO, Defendant.

United States District Court
S. D. New York.
Jan. 3, 1963.

744

Vincent L. Broderick, U. S. Atty. for Southern District of New York, New York City, Jonathan L. Rosner, Asst. U. S. Atty., of counsel, for United States of America.

Harold O. N. Frankel, New York City, for defendant.

WEINFELD, District Judge.

The defendant, understandably chafing under the restraint of a seventeen-year sentence imposed upon his plea of guilty to a charge of which the convictions of two codefendants were reversed and the third was acquitted, seeks permission under Rule 32(b) of the Federal Rules of Criminal Procedure to withdraw his plea of guilty. The motion is made four years after the plea was entered.

The defendant was one of eleven persons named in the now well publicized Santore case, which brought in its wake diverse views as to the circumstances whereby the presumption under section 174 of Title 21, United States Code, comes into play.[1] Napolitano was named together with Narducci, Tarlentino, Tolentino and Orlando in one substantive count (count 4) and with them and others in the conspiracy count (count 5). Since Napolitano and Tolentino were fugitives, the case proceeded to trial against the remaining nine defendants, all of whom were convicted. With the exception of Orlando, the convicted defendants appealed. While their appeals were pending, Napolitano voluntarily surrendered on December 22, 1958, and, upon his arraignment in the Criminal Calendar and Motion Part, pled guilty and was sentenced in January, 1959.

Subsequent to Napolitano's sentence, the convictions of Narducci and Tarlentino upon the substantive and conspiracy charges were reversed by the Court of Appeals.[2] The reversal upon the substantive charge was grounded upon the Court of Appeals' view that with respect to a package of narcotics found in the trunk of Napolitano's car, the evidence was insufficient to establish "that they [Narducci and Tarlentino] were ever in possession, actual or constructive, of that package * * *";[3] further, that Narducci's temporary grasp of it did not bring into operation the statutory presumption of section 174 of Title 21. The conspiracy convictions of Narducci and Tarlentino were reversed upon the ground that their participation in a single, isolated transaction was insufficient to bottom an inference of continuing participation in a conspiracy.

About a year after the Court of Appeals' ruling, Tolentino, who, like Napolitano, had been a fugitive, also voluntarily surrendered and, after a trial to the Court without a jury, was acquitted in December, 1961. The acquittal was based essentially upon the Court of Appeals' holding of the absence of necessary facts to bring the presumption of

1. United States v. Santore, 290 F.2d 51 (2d Cir. 1959), aff'd in part, rev'd in part on rehearing in banc, 290 F.2d 74 (2d Cir. 1960), cert. denied 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961). See generally, United States v. Gregory and Sumpter, 307 F.2d 536 (2d Cir. 1962), petition for rehearing and rehearing in banc for Sumpter filed November 30, 1962; United States v. Hernandez, 290 F.2d 86 (2d Cir. 1961).

2. Apparently there is no disposition by the Government to retry their cases since the original reversal was entered more than three years ago.

3. 290 F.2d at 64.

section 174 of Title 21 of the United States Code into effect.[4]

The foregoing extended reference to the other defendants has been made because Napolitano's application to be relieved of his plea of guilty centers about the issue which resulted in the favorable disposition of their cases.

 While the basis of the defendant's motion is not clearly defined and is somewhat discursive, the essential claim, since the motion seeks "leave to withdraw his plea of guilty," must rest upon a contention of "manifest injustice." Under Rule 32(d) a motion under the Rule, as distinguished from a proceeding under section 2255 of Title 28, is addressed to the District Court's discretion and is not a matter of right. The burden of persuasion is upon the defendant to establish the grounds upon which he relies for the favorable exercise of the Court's discretion.[5]

Napolitano does not contend that his plea of guilty was the result of any inducement, promise, threat, coercion or other conduct of the Court, Government counsel or law enforcement officers. The "manifest injustice" revolves about the reversal of the convictions of Narducci and Tarlentino and the acquittal of Tolentino, based as they were upon the lack of sufficient evidence to establish actual or constructive possession of the narcotics found in Napolitano's car. Napolitano seeks to equate his position to theirs and urges that upon a trial, if the withdrawal of his plea is permitted, his acquittal will follow.[6] He urges that not only is mere possession of narcotics not a violation of the statute, but that "possession was not ever shown by the Government in regard to me." Proceeding from this premise, he asserts that his counsel failed to discuss the question

of "possession" with him or to explain the burden of proof that the Government would have to sustain; that his plea of guilty was entered in ignorance of such matters and had he been fully and adequately advised, he would not have waived his "right to stand trial and to put the Government to its proof." Thus, inferentially, his former attorney is charged with incompetent representation.

 The defendant has failed to submit any statement or explanation of his participation in the events relating to the package found in his car. On a motion such as this, the least that can be expected is a statement of innocence based upon facts.[7] The conclusory and guarded assertion by the defendant that he "is innocent of any crime based on Title 21 U.S.C. Section 174" does not meet this requirement. The bare allegation is tied to his belief that the Government would not have been able to establish actual or constructive possession of the narcotics, but the omission to set forth a single evidentiary fact with respect to events preceding and subsequent to his activities in connection with the package of narcotics found in his car is significant.

Guilt, of course, is personal as to each defendant and the evidence supporting the charge as to each may differ. An immediate and substantial distinction appears from the Court of Appeals' reference to the evidence touching upon this defendant. The Court noted that Ignazio Orlando (the fifth defendant in the fourth count who did not appeal his conviction) "drove to a place in the Bronx, parked his car, met Anthony Napolitano and transferred the package to the trunk of the latter's parked car. Orlando then drove off and Napolitano

4. United States v. Tolentino, Cr. 155–49 (S.D.N.Y.). Minutes of trial record, December, 1961.

5. United States v. Shillitani, 16 F.R.D. 336 (S.D.N.Y.1954).

6. Compare United States ex rel. Noia v. Fay, 300 F.2d 345 (2d Cir.), cert. grant-

ed, 369 U.S. 869, 82 S.Ct. 1140, 8 L.Ed. 2d 874 (1962), No. 84, 1962 Term.

7. United States v. Paglia, 190 F.2d 445 (2d Cir. 1951); United States v. Norstrand Corp., 168 F.2d 481 (2d Cir. 1948). See also, Haywood v. United States, 127 F.Supp. 485 (S.D.N.Y.1954).

walked away. \* \* \* Early the next morning Tolentino and Napolitano attempted to drive Napolitano's car away. Federal agents tried to apprehend them and gave chase. The defendants escaped, but the agents recovered the car. The package in the trunk was found to contain six and one-half pounds of pure heroin—2.94 kilograms." [8] This mere recital points up a difference of facts on the issue of Napolitano's actual or constructive possession, his power to control or direct the disposition of the package found to contain the narcotics.

Other factors sharpen the difference. Napolitano was represented by counsel of his own selection—an able lawyer with extensive experience in Federal criminal matters, both as a former Assistant United States Attorney and defense counsel. Upon his arraignment, he and his counsel both stated the plea was "guilty." He was then questioned at length by the Court to determine whether the plea was voluntarily and understandingly offered, as required by Rule 11 of the Federal Rules of Criminal Procedure. The plea was accepted only after his answers left no doubt that he understood the seriousness of the plea and its consequences.

On January 13th the defendant and his counsel appeared for sentence before Judge Noonan, who had presided at the trial of the codefendants whose appeals were yet to be heard. An Assistant United States Attorney made a detailed statement with reference to the package containing the narcotics, the circumstances under which it was placed in his car. The prosecutor's statement of Napolitano's participation went much beyond the brief reference to him in the Court of Appeals opinion. The statement indicated the package had been transferred by Orlando from his car to the trunk of Napolitano's car in the

presence of the latter; [9] that it had been in the car about six hours when Napolitano attempted a getaway at eighty miles per hour (some time after the abortive attempt of Narducci to remove it); and that Napolitano then abandoned and fled from the car with the package still in the trunk. The evidence so described would, on the issue of "possession," bring Napolitano within the holding on this subject in United States v. Rich,[10] the facts of which closely parallel those pertaining to him.

But going beyond this is the fact that the description by the Assistant United States Attorney of Napolitano's activities was not challenged by the defendant or his counsel.[11] On the contrary, defendant's counsel made a powerful plea on behalf of his client, emphasizing his voluntary surrender and his plea, as he termed it, of "mea culpa—what I did I am sorry for, I am wrong, I throw myself on the mercy of the Court, I am not pleading not guilty. This is how I was involved." The defendant himself, under his right of allocution, responded, among other matters, " \* \* \* I have made a mistake, I made a great mistake, and I am very sorry for it. \* \* \*" [12]

On March 5, 1959 the defendant, then represented by new counsel, who also appears for him on this present motion, moved pursuant to Rule 35 for a reduction of sentence. The sole basis for the motion was a plea for leniency, in support of which his new attorney submitted his own affidavit wherein he stated: "It is true he admitted his guilt and participation in this illicit traffic. His environment, however, was such that it was most difficult not to become involved in some undertaking which would bring in 'easy money'." Not the slightest suggestion was made that the defendant was innocent; there was no repudiation of

8. 290 F.2d at 58.

9. The testimony upon the trial was that Napolitano, who had been with Orlando, opened the trunk of his, Napolitano's, car and that Orlando placed the package in the trunk. Government Appendix 42a–43a, 59a–60a.

10. 262 F.2d 415 (2d Cir. 1959).

11. See United States v. Paglia, 190 F.2d 445, 447 (2d Cir. 1951).

12. Proceedings of sentence, January 13, 1959.

his plea of guilty, no denial of his participation in the crime as outlined at the time of sentence, and no statement that his plea was entered in ignorance or that he desired to withdraw it. The motion was denied by Judge Noonan. No other action was taken until the present motion, made, as already noted, four years after the entry of his plea of guilty.

The defendant's admissions upon his arraignment and sentence in open court, in the presence of his able and experienced lawyer and the Judge, are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion that the plea was made in ignorance of the issue of "possession" because his lawyer failed to advise him as to the essential elements of the crime or to explain the Government's burden of proof.[13] Nothing of probative value has been submitted on this motion to warrant rejection of his earlier admissions made under adequate judicial safeguards, or the acceptance of his assault upon the competency of the attorney who stood by his side at the time of arraignment and sentence.[14]

The verity of the defendant's present assertions may readily be tested by the brazen distortion of his statement at the time of sentencing. He now alleges that when he told the Court, "I have made a mistake, I made a great mistake, and I am sorry for it. I have but three—," he was not expressing a penitent attitude, but was attempting to inform the Court that he desired to withdraw his plea of guilty, when he was abruptly cut off by the Court. A reading of the entire colloquy shows beyond peradventure that there is not the slightest basis for this gross perversion of what transpired. It not only falls of its own weight, but the fact that almost four years went by before his present contention was made exposes the fiction.

■ Finally, the defendant contends that his original attorney informed him that if he pled guilty he could expect a minimum sentence of five years. Assuming that such a statement was made, the authorities are in accord that "manifest injustice" does not result when a plea of guilty is voluntarily entered upon such advice and the forecast of sentence does not materialize. Disappointment in a sentence imposed or even misinformation received from the attorney, absent his improper conduct or any representation by the Court or prosecutor, does not require that the motion to withdraw a plea of guilty be granted on the ground of manifest injustice.[15]

The motion is denied in the exercise of discretion.

13. Cf. United States v. Smith, 257 F.2d 432 (2d Cir. 1958), cert. denied, 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 629 (1959).

14. Cf. United States v. Shillitani, 16 F.R.D. 336 (S.D.N.Y.1954).

15. See Georges v. United States, 262 F. 2d 426 (5th Cir. 1959); United States v. Parrino, 212 F.2d 919 (2d Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); Ridgeway v. United States, 205 F.2d 680 (6th Cir. 1953); United States v. Weese, 145 F.2d 135 (2d Cir. 1944).