**UNITED STATES of America**

v.

**Thomas E. FINNEY, Jr.**

**Crim. Nos. 64-087, 64-253, 64-260 to 64-262.**

United States District Court
W. D. Pennsylvania.

June 8, 1965.

Gustave Diamond, U. S. Atty., by Stanley Greenfield, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Richard D. Klaber, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

After pleading guilty to five charges of bank robbery (§ 2113(d), Title 18 U.S.C.) and after being sentenced under § 4208(b), Title 18 U.S.C., for the maximum period of imprisonment prescribed by law and for study pursuant to § 4208

(c),[1] the defendant moved for leave to withdraw his pleas of guilty. Rule 32 (d), Fed.R.Crim.P.[2]

The guilty pleas were entered before Judge Sorg on May 7, 1964, at Criminal No. 64–087; and before me on August 10, 1964, at Criminal No. 64–253, and on August 17, 1964, at Criminal Nos. 64–260, 64–261, and 64–262.

On each occasion when the guilty pleas were entered and sentences imposed, the defendant was represented by Zeno Fritz, Esq., counsel of his choice.

The defendant was brought before me for final sentence on December 21, 1964; Attorney Fritz was present. On this occasion, the defendant stated orally that his pleas were induced by threats, promises, and representations made to him by an Assistant United States Attorney and members of the Federal Bureau of Investigation. His counsel, Mr. Fritz, who defendant stated was present when most of the alleged inducements were made, could not corroborate the defendant and requested permission to withdraw as counsel, which request was granted. The final sentence was postponed until other counsel could be procured. Eventually, Richard D. Klaber, Esq. was appointed to represent defendant.[3] On February 9, 1965, Attorney Klaber presented the motion under consideration. A full hearing was held. Briefs were submitted, the Government's brief being received on May 26, 1965.

In my opinion, the defendant has not shown that manifest injustice will result unless his request to withdraw his pleas is granted, and, therefore, his motion will be denied. Rule 32(d), Fed. R.Crim.P. United States v. Shneer, 194 F.2d 598 (3d Cir. 1952).

On March 18, 1964, the defendant was indicted at Criminal No. 64–087 for robbing the Stanton Heights Office of the Mellon National Bank & Trust Company on January 15, 1964. At his arraignment on April 2, 1964, he pleaded not guilty. On May 7, 1964, before Judge Sorg, he withdrew his plea of not guilty and entered a plea of guilty. At that time he affirmed that the plea was made voluntarily without any threats, promises or inducements. He was advised of the maximum penalties involved. His bail was continued pending receipt of a presentence report. On August 10, 1964, before me, he waived indictment and pleaded guilty to an information at Criminal No. 64–253, charging him with robbing the same bank on September 27, 1963. He was advised of the maximum sentences. He unequivocally asserted, in the presence of his counsel, that he robbed the bank on September 27, 1963, as well as on January 15, 1964, and that no one had made any promises of leniency or threats in order to induce him to enter the pleas. Defendant and his counsel requested that he be sentenced for study as described in § 4208(c).

---

1. See sentences and transcript of proceedings of imposition of sentences on August 10, 1964, pp. 26–27; transcript of proceedings of imposition of sentences on August 17, 1964, pp. 12–13. At Criminal Nos. 64–087 and 64–253, the defendant was committed for the maximum of 25 years, the sentences to run concurrently; and at Criminal Nos. 64–260, 64–261, and 64–262, he was likewise committed for the maximum, the sentences to run concurrently, but consecutively to those imposed at Criminal Nos. 64–087 and 64–253.

2. This rule provides:
   "Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only be-
   fore sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

3. In the interval between December 21, 1964, and January 29, 1965, the court appointed Hubert Teitelbaum, Esq., a former United States Attorney, to represent the defendant. After Mr. Teitelbaum had conferred with defendant and completed his investigations, the defendant rejected his services and stated that he wished to hire his own lawyer. He was given until January 29, 1965 to do so, but on that date it appeared that he was unable to hire counsel. Thereupon, Mr. Klaber was appointed.

On August 17, 1964, in the presence of his counsel, he waived indictment and pleaded guilty to three informations charging him with armed robbery of the following insured financial institutions: Wilkinsburg Savings and Building Loan Association on July 16, 1962 (Criminal No. 64–260); Homewood Savings and Loan Association on September 20, 1962 (Criminal No. 64–261); Stanton Heights Office of the Mellon National Bank & Trust Company on June 30, 1964 (Criminal No. 64–262).[4] Again, he unequivocally stated, in the presence of his counsel, that no threats or promises had been made to induce him to plead guilty to any of these three informations and that he entered the pleas voluntarily. Again he was advised of the maximum sentences. His counsel concurred in the pleas.

From the records of the arraignments and the evidence adduced at the hearings, I find that in open court the defendant, in the presence of his lawyer, not only pleaded guilty voluntarily to armed robbery of the five insured institutions, but related in detail the facts concerning the execution of the robberies of the Stanton Heights Office on September 27, 1963 and January 15, 1964, with the assistance of Eldridge Allen,[5] as well as the reasons underlying his motivation on each occasion, and admitted that the other three robberies were perpetrated with the aid of a deadly weapon after drinking as was his custom in perpetrating all five crimes. All the pleas were entered after extended deliberation and consultation with his counsel. The sentences were imposed on the basis of the pleas of guilt and on the facts related to me by the defendant at the sentence hearings; his deposition taken in the presence of his counsel was not considered, but I ordered that it be forwarded to the prison authorities in connection with the study.

■ The defendant is mature and intelligent;[6] he is not a stranger to the criminal court; there is not the slightest suggestion that any of his guilty pleas were entered by force, ignorance, fear, fraud, inadvertence, or mistake. At each arraignment he clearly understood the penalties involved, but, notwithstanding, asserted that he was entering the guilty pleas voluntarily after discussing the facts with his counsel. His counsel, Mr. Fritz, was a former Assistant United States Attorney and is a most competent and respected member of the Pennsylvania bar and the bar of this court. The record discloses that he was aware of and fully performed his responsibilities as defendant's counsel and as an officer of the court.

■ In the defendant's motion and testimony, he asserts that in May, 1964, he was induced to change his plea from not guilty to guilty in the indictment at Criminal No. 64–087 because of a promise that he would not be sentenced until September.[7] I find that there was no such promise made by any person connected with the prosecution. His counsel did not make such a promise to him but predicted that a pre-sentence report would be requested which might take some time, and that from information secured upon in-

4. While defendant was at large on bail after pleading guilty to robbing the Stanton Heights Office of the Mellon Bank in January, 1964, it was then discovered that he had participated in another robbery of the same bank. He was called for sentence on the indictment at Criminal No. 64–087 on June 30, 1964, postponed to July 2nd. He admitted that on June 30th he had robbed the Stanton Heights Office of the Mellon Bank for the third time.

5. Allen has been convicted and sentenced for complicity in both crimes.

6. As a result of the study, the Bureau of Prisons submitted a report which, inter alia, disclosed that the defendant was a bright individual of normal intelligence with some emotional instability in terms of impulsivity, impatience and moody spells; it negatived any indications of a psychosis.

7. At the sentence hearing on August 10, 1964, the defendant did not mention any such "promise". At the hearing on the motion, his counsel categorically denied that any such promise was made by Mr. Greenfield, the Assistant United States Attorney. Transcript of February 9, 1965, p. 78.

**115**

quiries made to the Assistant United States Attorney in charge, there was not going to be any demand for a prompt sentence on the part of the Government. Of course, these predictions took place before it was discovered that the defendant had participated in other bank robberies, one of which took place while he was at large on bail and on a day which had been scheduled for sentence (see f.n. 4). In any event, a discussion or even a representation that he would not be sentenced until September, made to him by his counsel, was not the inducing cause of the change of plea or of the entering of any of his other pleas of guilty. Swanson v. United States, 304 F.2d 865 (8th Cir. 1962).

██ In his motion and testimony the defendant says that he was promised psychiatric treatment and concurrent sentences on all the charges, and that no steps would be taken to foreclose on his father's house as a result of the forfeiture of his bail bond for failure to appear for sentence on July 2, 1964. We find that no such promises were made by any person connected with the prosecution or by his counsel. It is true that he discussed psychiatric treatment and psychiatric study with the Assistant United States Attorney, the members of the F.B.I., and his counsel; he also discussed with them the possibility of concurrent sentences on all charges; and he requested and was advised that the Government would not foreclose on his father's house.[8] None of these discussions operated upon defendant as inducements to plead guilty to any of the robberies. Cf. United States v. Sammara, 330 F.2d 1 (3d Cir. 1964).

From the records and the evidence, I find that none of the pleas of guilty were induced by any promises, threats, or representations on the part of any one connected with the prosecution. Nothing was said or done which deprived the pleas of their voluntary character. The pleas were induced because the defendant was conscious of his guilt and because in truth and fact he was guilty of the crimes charged as he stated in open court when he convicted himself. Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, 493 (1962), quoting from Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); Cortez v. United States, 337 F.2d 699, 701 (9th Cir. 1964); United States v. Shneer, supra; United States v. Colonna, 142 F.2d 210 (3d Cir. 1944).

It is to be observed that at no time during the arraignments and sentence proceedings did defendant assert that he was innocent of the charges of bank robbery. Only after a lapse of months does he assert that he was innocent of the crimes. That assertion is conclusory and unsupported by any facts counteracting the specific details of the crimes related to me at the sentence hearings, and to the prosecuting authorities in his signed deposition taken in the presence of his counsel.

██ A plea of guilt is a solemn declaration not to be lightly disregarded in favor of self-serving declarations that the pleas were induced by threats and promises, especially when such threats and promises were negatived by the defendant in open court with a capable lawyer at his side who could not conscientiously corroborate defendant in any important particular. Cf. United States v. Napolitano, 212 F.Supp. 743, 745 (S.D. N.Y.1963).

We think the defendant, understandably apprehensive of a long prison sentence, has acquired misgivings since he entered his pleas, and, with the hope that springs eternal, has in his mind converted all former discussions relating to leniency, concurrent sentences, time of sentence, psychiatric treatment, and foreclosure on his parents' home, into promises and misrepresentations. Unfortunately for him, the evidence does not support his allegations.

An appropriate order will be entered.

8. The Government made no effort to foreclose on his father's house after the defendant's bail bond was forfeited; in fact, an order was entered by me on September 4, 1964, exempting his parents' property from any forfeiture proceedings. See: Appendix.

**116**

APPENDIX

DGH:LTE 8/28/64

## IN THE UNITED STATES COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | No. 64–87 Criminal |
| THOMAS E. FINNEY, JR. | |

### ORDER OF COURT

And now, to wit, this 4th day of September, 1964, it appearing to the court that Thomas E. Finney, Jr., the defendant in this action, was freed on an appearance bond, posted by Allegheny Mutual Casualty Company, surety, in the sum of $5,000; and

It further appearing that on July 2, 1964, the said defendant failed to appear as ordered by the court for sentencing on his plea of guilty; and

It further appearing that on July 6, 1964, the $5,000.00 appearance bond was ordered forfeited by the court; and

It further appearing that the ultimate burden of the forfeiture falls upon the parents of the defendant through their separate agreement with the said surety company,

Now therefore, upon motion of the said surety company and after due consideration by this Court, IT IS ORDERED that the sum of $4,800.00 from the $5,000.00 surety bond forfeited on July 6, 1964, be remitted to the Allegheny Mutual Casualty Company on condition that said surety will not look to the parents or family of the defendant for any portion of the expenses incurred by it to secure the refund of this remission.

It is further ordered that upon the entry of this order and the receipt of the sum of $200.00 by the United States Attorney from the Allegheny Mutual Casualty Company, the Clerk of this Court shall forthwith return the $5,000.00 surety bond posted for the appearance of Thomas E. Finney, Jr. to the said surety.

s/ Rabe F. Marsh
_____
United States District Judge

CONSENTED TO:

United States Attorney
for the Western District
of Pennsylvania

By: s/ David G. Hill
_____
DAVID G. HILL
Assistant United States Attorney

PRINGLE, BREDIN, THOMSON, RHODES
& GRIGSBY

By: s/ Norman J. Cowie
_____
Attorneys for Allegheny Mutual
Casualty Company, Surety