[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15640
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 15, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 96-00045-CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NECASTILLE DAVID BEJACMAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 15, 2007)**

Before TJOFLAT, ANDERSON and MARCUS, Circuit Judges.

PER CURIAM:

Necastille David Bejacmar, a Bahamian national and not a United States

citizen, proceeding through counsel, appeals the district court's denial of his application for a writ of error coram nobis, 28 U.S.C. § 1651. Upon review of the record and consideration of the parties' briefs, we discern no reversible error.

In 1998, Bejacmar pled guilty to conspiracy to commit bank fraud. At sentencing, he requested a continuance to give himself time to pay enough restitution to lower the amount of loss below $10,000.00, which he believed would allow him to avoid deportation.[1] The district court granted the continuance and, after Bejacmar repaid $25,000.00 of the $34,095.75 in losses, sentenced him to eight months' house arrest, five years' probation, and restitution in the amount of $9,095.75. Despite his efforts, Bejacmar was arrested and detained by the INS because of his conviction. While in custody, he filed a habeas petition pursuant to 28 U.S.C. § 2255 claiming that his plea was not knowing and voluntary because it had been based on assurances by the government that he would not be deported. The district court denied his petition and Bejacmar did not appeal. In June 2005, Bejacmar petitioned for a writ of error coram nobis on the related but distinct claim that his sentencing counsel, not the government, advised him to plead guilty on the assurance that he would not be deported. The district court denied the writ, and

---

[1] Under 8 U.S.C. § 1101(a)(43)(M)(i) of the Immigration and Nationality Act, an offense of fraud in which the loss to the victim exceeds $10,000.00 is an "aggravated felony" that subjects an alien to deportation.

Bejacmar has appealed, arguing that the district court erred by denying him a hearing on the matter or any other relief.

We review a district court's denial of the writ of error coram nobis for an abuse of discretion. Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000). "Federal courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. 1651(a)." United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000). "The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." Id. The bar for coram nobis is high and relief may issue only where: (1) "there is and was no other available avenue of relief" and (2) "when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." Alikhani, 200 F.3d at 734. Furthermore, a district court may consider coram nobis petitions only where the petitioner presents sound reasons for failing to seek relief earlier. United States v. Morgan, 346 U.S. 502, 512, 74 S. Ct. 247, 253, 98 L. Ed. 248 (1954) (holding that "where no other remedy [is] available and sound reasons existing for failure to seek appropriate earlier relief" a defendant's motion for writ of coram nobis must be heard by the federal court); see also Mills, 221 F.3d at 1204 ("[C]ourts may consider coram nobis petitions only where no other remedy is

3

available and the petitioner presents sound reasons for failing to seek relief earlier.").

Although we have not previously specified a standard of review for the denial of an evidentiary hearing in a petition for a writ of error coram nobis, in other contexts a district court's denial of an evidentiary hearing is reviewed for abuse of discretion. See Aron v. United States, 291 F.3d 708, 714 n.5 (11th Cir. 2002); see also United States v. Smith, 257 F.2d 432, 434 (2nd Cir. 1958) (holding that the All-Writs statute does not entitle every applicant to testify orally in support of his motion for the issue of the writ). In Aron, we further stated that if the petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron, 291 F.3d at 715. However, if the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing. Id.

The district court did not commit an error of law when it denied Bejacmar's application for writ of error coram nobis without a hearing because even if Bejacmar's present allegations are true, he still would not be entitled to coram nobis relief. We assume without deciding that Bejacmar could make out a claim for ineffective assistance of counsel based on the alleged affirmative

4

misrepresentation by his sentencing counsel that Bejacmar would not be subject to deportation if he paid down the amount of restitution.  See Downs-Morgan v. United States, 765 F.2d 1534, 1541 (11th Cir. 1985) (remanding for evidentiary hearing on claim of affirmative misrepresentation by counsel concerning deportation consequences of guilty plea); see also INS v. St. Cyr, 533 U.S. 289, 322-23 nn. 48 & 50, 121 S.Ct. 2271, 2291 nn.48 & 50 (2001) (suggesting in dicta that "competent defense counsel" would fully advise defendants of deportation consequences); United States v. Kwan, 407 F.3d 1005, 1014-18 (9th Cir. 2005) (granting coram nobis relief where counsel "actively misled" defendant about possibility of deportation); United States v. Couto, 311 F.3d 179, 188 (2d Cir. 2002) (permitting defendant to withdraw guilty plea in finding that "affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea . . . meets the first prong of the Strickland test").  We further assume that a claim of ineffective assistance of counsel can supply the basis for a writ of error coram nobis.  See Moody v. United States, 874 F.2d 1575, 1578 nn.3 & 6 (11th Cir. 1989) ("[W]e find it unnecessary to decide whether such a claim is cognizable in a coram nobis proceeding.").  However, in light of our decision in Moody, Bejacmar has failed to establish that he has "sound reasons" for failing to include his ineffectiveness claim when he earlier petitioned for relief under § 2255.

In Moody, the petitioner sought a writ of error coram nobis for relief from a earlier conviction for "willfully and knowingly possessing an unregistered destructive device." Id. at 1576. In support of his petition for the writ, Moody asserted that newly discovered evidence proved his innocence and that his counsel failed to carry out an adequate investigation that would have uncovered the evidence in violation of his Sixth Amendment right to effective assistance of counsel. Id. at 1578. Noting that the Supreme Court had limited coram nobis relief to cases where "sound reasons exist[ed] for fail[ing] to seek appropriate earlier relief," Id. at 1577-78 (citing United States v. Morgan, 346 U.S. 502, 511-12, 74 S.Ct. 247, 252-53 (1954)), we found that Moody, notwithstanding the newly discovered evidence, was

> aware of the true basis of [his ineffectiveness claim] at the conclusion of the trial. This being so, he should have articulated his claim of inadequate investigation along with the other allegations of ineffective assistance raised in his habeas corpus petition. Moody, unlike the petitioner in Morgan, has not proved that sound reasons exist for this procedural default. Therefore, there having been another remedy available for the sixth amendment violation alleged, Moody cannot now have his conviction vacated via the extraordinary writ of error coram nobis.

Id. at 1578.

Like Moody, Bejacmar claims to have "discovered new evidence" to support his ineffectiveness claim. (Petition for Writ of Error Coram Nobis ¶ 13.) In

6

Bejacmar's earlier § 2255 proceeding, the government came forward with an affidavit from Bejacmar's sentencing counsel in which counsel denied advising Bejacmar that he would not be deported if he reduced the amount of restitution. The affidavit also stated that Bejacmar received proper advice on the immigration consequences of his guilty plea from another attorney named Gonzalez. Although he believed the affidavit to be false, Bejacmar did not submit his own affidavit in response because he claims that he was not aware that he was able to submit an affidavit and that he did not believe that he could "refute the credibility of a Florida barred attorney in good standing." (Id. at 5.) Bejacmar also directed his habeas counsel to pursue an ineffectiveness claim against his sentencing counsel, but later learned that his habeas counsel "never followed thr[ough] with my request." (Id., Ex. 6 ¶ 7.)[2] According the Bejacmar, the "new evidence" justifying coram nobis relief is an affidavit from attorney Gonzalez stating that he never advised Bejacmar

_____

[2] We recognize that Bejacmar's sentencing counsel and habeas counsel worked together as partners at the time that Bejacmar pursued his habeas petition. Bejacmar's affidavit and brief suggest that this explains why his habeas counsel omitted the ineffective assistance claim against the sentencing counsel in his § 2255 petition. Assuming that to be so, it does not explain why Bejacmar himself learned of the omission only after the petition was denied. Nowhere does Bejacmar say when he learned of the omission or what prevented him from uncovering the omission during the nearly six years that elapsed between the filing of his habeas and coram nobis petitions. The only "new" piece of evidence Bejacmar cites to justify waiting until now to raise his ineffectiveness claim is the Gonzalez affidavit, which, as explained above, presents no new information unknown to Bejacmar at the time that he filed his habeas petition. At bottom, Bejacmar merely pleads ignorance of the omission, and mere ignorance does not qualify as a "sound reason" for failing to seek appropriate earlier relief.

7

on any immigration matters related to this case. This affidavit, in Bejacmar's view, "irrefutably establishes that [Bejacmar's sentencing counsel's] sworn statements were not accurate." (Id. at 6.)

Bejacmar has failed to give a sound reason for failing to make his ineffectiveness claim as part of his earlier § 2255 petition. The Gonzalez affidavit, whatever it says about the earlier affidavit from Bejacmar's sentencing counsel, offers no new information. Bejacmar himself claims to have known at the time that the government submitted the sentencing counsel's affidavit that the affidavit was false. Bejacmar could have, but did not, submit his own affidavit controverting his sentencing counsel's statements. Like the petitioner in Moody, Bejacmar was "aware of the true basis" of his ineffectiveness claim and "should have articulated his claim . . . along with the other allegations . . . raised in his habeas corpus petition." Moody, 874 F.2d at 1578. The Gonzalez affidavit, like the new evidence discovered in Moody, may lend additional support for an ineffectiveness claim, but it does not excuse Bejacmar from failing to include a claim he knew he had at the time that he filed his § 2255 petition. See id. Because of Bejacmar's failure to take advantage of this earlier avenue of relief, this is simply not a case of "compelling circumstances" where the "extraordinary remedy" of coram nobis is necessary "to achieve justice." Mills, 221 F.3d at 1203.

8

Therefore, we affirm.

**AFFIRMED.**