**UNITED STATES of America**

v.

**Mohammad Mutie KHALAF.**

**No. CR 84–185–MA.**

United States District Court,
D. Massachusetts.

June 22, 1999.

---

**4.** See footnote number one.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter comes before the Court on defendant's petition for writs of error coram nobis and/or audita querela pursuant to 28 U.S.C. § 1651. The government has filed an opposition. At issue is petitioner's contention that his guilty plea to a controlled substance offense should be set aside because he received ineffective assistance of counsel when his lawyer wrongly advised him on the law. For the reasons stated, the petition is GRANTED.

### I.

Petitioner Mohammad Mutie Khalaf is a citizen of Jordan who came to this country as a college student in 1978. At the time of his plea, he had been a permanent resident for three years. On July 20, 1984, he pled guilty to one count of conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute and distribution of a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. As a result of his plea, he received a two-year suspended sentence on each of the counts, a two-year term of probation, and was assessed a $1,000 fine. In December 1984, Petitioner was served with an order to show cause and notice of hearing, notifying him that deportation proceedings were being commenced against him by the Immigration and Naturalization Service ("INS"). The basis for the proceedings was that Petitioner was subject to deportation pursuant to 8 U.S.C. § 1251(a)(11) having been convicted of a crime related to a controlled substance. Over the next sev-

eral years, Petitioner sought all possible forms of relief available to him through the immigration court in order to prevent his deportation from the United States. While Petitioner pursued his remedies through the Board of Immigration Appeals, through an unfortunate combination of timing in the change of law and delay for which he was not responsible, he was denied relief. In addition, in 1985 he filed a motion to amend the judgment under Rule 35 with this Court, requesting that the Court consider him for sentencing and treatment under the Federal Young Adult Offenders Act, 18 U.S.C. § 4216. The motion was denied based on the fact that it was not timely filed and that the defendant was twenty-three years old at the time of his conviction. Moreover, because he is not in custody, he is not eligible to seek habeas relief under 28 U.S.C. § 2255. There are no other forms of relief available for the Petitioner to pursue.

At the time of the plea agreement hearing and sentencing, federal law, 8 U.S.C. § 1251(a)(11) provided that an alien may be deported "who is, or hereafter at any time after entry has been . . . convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." Federal law also provided that any alien convicted of certain crimes would not be subject to deportation where the sentencing court makes a recommendation to the Attorney General against deportation. 8 U.S.C. § 1251(b). However, the statute also provided that the judicial recommendation shall not apply to anyone who fell within § 1251(a)(11), that is to anyone who was convicted of an offense related to a controlled substance. § 1251(b)(2).

Petitioner alleges that prior to the time he entered his plea, defense counsel informed him that he and the United States Attorney would jointly request that this Court issue a Judicial Recommendation Against Deportation ("JRAD") which would protect him from being deported by

the Immigration and Naturalization Service ("INS"). According to Petitioner, his counsel knew that he was not a United States citizen and had discussed with him the possible immigration consequences that might arise due to the conviction. His counsel did inform him that pursuant to 8 U.S.C. § 1251(a)(11), he may be deported after pleading guilty to an offense relating to a controlled substance, but assured him that the JRAD would protect him from deportation. As a result, he advised his client to make a harmful decision to plead guilty to a deportable charge. Petitioner contends that the failure of counsel to research the statutory limits of the JRAD pursuant to 8 U.S.C. § 1251(b)(2) before advising Petitioner to plead guilty, and the failure of counsel to accurately advise him about the possible immigration consequences, deprived him of his Sixth Amendment right to effective assistance of counsel.

## II.

■ The writ of error coram nobis is a remedy intended to achieve justice when "errors of the most fundamental character" have occurred in a criminal proceeding. *United States v. Morgan*, 346 U.S. 502, 511–12, 74 S.Ct. 247, 252–53, 98 L.Ed. 248 (1954) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914)). It is "limited to 'those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'" *United States v. Michaud*, 925 F.2d 37, 39 (1st Cir.1991) (citation omitted). The remedy of error coram nobis is available to vacate a conviction after sentence has been served and the defendant is no longer in custody. *U.S. v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (19544). In *Morgan*, the Supreme Court recognized that "[a]lthough a term has been served, the results of the conviction may persist." 346 U.S. at 512, 74 S.Ct. 247.

■ In order to obtain coram nobis relief, petitioner must first establish that a fundamental error occurred at some point

during the course of his criminal proceedings. *Morgan*, 346 U.S. at 512, 74 S.Ct. at 253. An example of such an error is where a defendant receives ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution. *Id.*, 346 at 511–12, 74 S.Ct. at 252–53 (finding coram nobis lies to remedy Sixth Amendment error); *Moody v. United States*, 874 F.2d 1575, 1577–78 (11th Cir.1989), *cert denied*, 493 U.S. 1081, 110 S.Ct. 1137, 107 L.Ed.2d 1042 (1990). Criminal defendants have a Sixth Amendment right to effective assistance of counsel at sentencing. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). The granting of § 1251(b) relief, a JRAD, is part of the sentencing process. *Ittah v. U.S.*, 761 F.Supp. 157, 158 (D.Me.1989) citing *Janvier v. U.S.*, 793 F.2d 449 (2nd Cir.1986).

■ In order to prove ineffective assistance of counsel, petitioner must show (i) that his attorney's performance was, in light of all circumstances, unreasonable under prevailing professional norms, and (ii) that there is a reasonable probability that, but for counsel's errors, a different result would have obtained. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Argencourt v. U.S.*, 78 F.3d 14, 16 (1st Cir.1996).

■ This Circuit has held that in order to state a claim under the first prong of Strickland, "a defendant must allege and demonstrate that his counsel's error clearly 'resulted from neglect or ignorance, rather than from informed professional deliberation.'" *U.S. v. Bosch*, 584 F.2d 1113, 1121 (1st Cir.1978), citing *Marzullo v. Maryland*, 561 F.2d 540, 543–45 (4th Cir.1977) *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978). An attorney has a duty to research the applicable law and to advise his client in such a way as to allow him to make informed choices, when the attorney undertakes to represent a criminal defendant. *Straw v. U.S.*, 931 F.Supp. 49, 51–52 (D.Mass.1996).

■ In support of his writ, Petitioner submits the affidavit of his attorney, Calvin Weir. At the time of the prosecution, Petitioner's counsel knew that Petitioner was not a U.S. citizen and that he may be subject to deportation consequences in the event of his conviction. Affidavit of Calvin Weir, p. 2, ¶ 4. Nevertheless, counsel neglected to research the applicable law and neglected to consult with counsel who had expertise in the immigration area, despite having sufficient time to do so. Counsel's failures in this regard constitute inadequate representation. *Ittah v. U.S.*, 761 F.Supp. 157 (D.Me.1989) (alien defendant was denied effective assistance of counsel when his attorney failed to research applicable law relating to a judicial recommendation against deportation). *See also Janvier v. U.S.*, 793 F.2d 449 (2nd Cir.1986) (counsel's failure to request a JRAD falls short of adequate representation under the norms of professional competency and therefore constitutes ineffective assistance of counsel).

■ Mistakenly convinced that a JRAD would protect Petitioner from deportation, counsel proceeded to negotiate that as part of the plea bargain that he and the Assistant U.S. Attorney would jointly recommend. Affidavit of Calvin Weir, pp. 1–2, ¶¶ 3, 4. Mr. Weir then recommended the plea bargain to his client because part of the plea would include a JRAD. According to Mr. Weir, he told Petitioner that he thought the JRAD would protect him. *Id.* at p. 2, ¶ 4. Mr. Weir believes that Petitioner substantially relied on the JRAD in his decision to change his plea. *Id.* p. 3, ¶ 5. Indeed, in his affidavit, Petitioner says that he relied on his lawyer's advice that a plea of guilty coupled with a JRAD would protect him from deportation. Affidavit of Mohammad M. Khalaf, p. 1, ¶ 4. Moreover, the Court proceeded under the mistaken belief that it would have an effect on the deportation consequences. At the disposition, I asked the defendant, at the suggestion of the assistant U.S. attorney, whether he understood the possible consequences of his guilty plea. While it appears, as noted in the government's opposition, that

the defendant's answers to my questions were clear and definite, I believe the answers were informed by the representations made by counsel that he would not be deported. This was the most serious consequence, since the government had recommended a no-jail sentence and I was disposed to accept that recommendation. Accordingly, I can understand that he was anxious to be assured of relief in the form of a JRAD and it was in this context that he offered his plea of guilty.

According to the transcripts from the sentencing hearing, Petitioner's counsel was wrong about the availability of a JRAD in Petitioner's case. Counsel should have been aware from a reading of the statute that a JRAD was not available in such a case. Counsel's affirmative misrepresentation regarding the deportation consequences of a guilty plea is unreasonable under prevailing professional norms. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ This Court recognizes that it is well established that the Constitution does not require defense counsel to inform an accused person of the collateral consequences of his guilty plea, and therefore that ineffective assistance of counsel does not occur where counsel fails to tell the defendant that his plea may result in deportation. *See United States v. Quin,* 836 F.2d 654, 655 (1st Cir.1988); *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir. 1985). However, while several courts have held that counsel's failure to advise a defendant of the deportation consequences of a guilty plea is not sufficient to establish ineffective assistance under *Strickland,* other courts have distinguished that counsel's affirmative misrepresentation in response to a specific inquiry from the defendant may, under certain circumstances, constitute ineffective assistance of counsel. *United States v. Campbell,* 778 F.2d 764, 769 (11th Cir.1985); *Downs–Morgan v. U.S.,* 765 F.2d 1534, 1540 (11th Cir.1985) (the court declined to hold that "an affirmative misrepresentation by an attorney in response to a specific inquiry by the

accused [alien defendant] which results in a plea of guilty [and subsequent deportation] necessarily constitutes ineffective assistance of counsel.")

In *United States v. Mora–Gomez,* 875 F.Supp. 1208 (E.D.Va.1995), an alien defendant brought a petition for writ of coram nobis claiming that his guilty plea to a drug offense should be set aside because he received ineffective assistance of counsel when his lawyer wrongly advised him on the availability of a JRAD. The district court held that counsel's affirmative misstatement of the deportation consequences of the guilty plea may be ineffective assistance of counsel. The court went on to deny the writ on the basis that petitioner failed the second prong of *Strickland* by failing to establish a reasonable probability that he would not have pled guilty had he received correct advice about deportation. In *Mora–Gomez,* the government opposed the defendant's motion for a JRAD and the motion was subsequently denied by the district court. In contrast, in Petitioner's case, the government recommended the JRAD and the Court accepted the recommendation and allowed the JRAD. Similarly, in *United States v. Nagaro–Garbin,* 653 F.Supp. 586 (E.D.Mich.1987), the court held that a Peruvian national who pled guilty to a drug offense was not denied effective assistance of counsel when his counsel informed him of the possibility of deportation and made no affirmative representations that the defendant would not be deported. The court noted, however, that if counsel made an affirmative misrepresentation in response to a specific inquiry from the defendant, the defendant may have a claim for ineffective assistance of counsel.

Here, Petitioner does not simply claim that defense counsel failed to inform him about the consequences of his plea. Rather, he alleges that prior to his plea, counsel told him that he would receive a JRAD and that it would protect him against deportation, and therefore that his guilty plea would not result in deportation. This was an affirmative misstatement by defense counsel to Petitioner. It was not simply an instance where defense counsel failed to make Petitioner aware of immigration consequences. Rather, it was a representation made to the Petitioner in the context of discussions about deportation and Petitioner's expressed concerns about the effect of his plea.

The present record, including the transcript of the August 20, 1984 hearing, and the affidavits, reflects that defense counsel was mistaken about the meaning of a JRAD in Petitioner's case. Based on a plain reading of the statute, counsel should have been aware that a JRAD was not available in a drug case. His failure to read the statute and articulate the proper meaning to Petitioner is unreasonable under prevailing professional norms. *See Mora–Gomez,* 875 F.Supp. at 1213 (finding that petitioner satisfied the first prong of *Strickland* with a showing that his attorney failed to read § 1251(b) to know that a JRAD was not available in his client's drug trafficking case). *See also Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979) (finding ineffective assistance where lawyer could have easily discovered applicable rule regarding effect of guilty plea on parole eligibility in published material) Therefore, Petitioner satisfies the first prong of *Strickland.*

▇ In order to satisfy the second prong of *Strickland,* Petitioner must show that but for his counsel's error, he would have pled not guilty and proceeded with a jury trial. In his affidavit he claims that he only changed his plea to guilty because of his counsel's assurance that the JRAD would protect him from deportation, otherwise he would have gone to trial. Affidavit of Mohammad M. Khalaf, p. 1 Petitioner's counsel says that he was "surprised and dismayed" to learn that Petitioner had been made subject to deportation proceedings. Affidavit of Calvin Weir, p. 2 He further admits that Petitioner relied on counsel's mistaken representations about JRAD in his decision to plead guilty to the charges. Id.

It is well established that if Petitioner had raised the ineffective assistance claim by direct appeal or § 2255 motion, he would be required under *Strickland* to show a reasonable probability that, but for his counsel's error, he would not have pled guilty and gone to trial. However, the courts are split on whether this is the same test to use in analyzing writ of coram nobis. According to some courts "the greater weight of authority indicates that coram nobis does not require a showing of innocence or likely success at trial." *Mora–Gomez,* 875 F.Supp. at 1214, citing *Downs–Morgan,* 765 F.2d at 1541; *United States v. Rasco,* 697 F.Supp. 343, 345–46 (N.D.Ill.1988). This follows *United States v. Mandel,* 862 F.2d 1067 (4th Cir.1988), cert. denied, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). There the court held that coram nobis relief is available even if the error does not affect the conclusion that the defendants were guilty of criminal conduct and that the petition does not require the court to decide "if the petitioners are bad men or even if they have committed crimes." *Id.* at 1075.

I conclude that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. Had he been advised correctly that the JRAD would not prevent his deportation, he would not have pled guilty to these charges. Thus, Petitioner he has established ineffective assistance of counsel under the two-part *Strickland* test.

Petitioner was misinformed and misadvised by his counsel about the consequences of his plea. As a result, Petitioner pled guilty to a deportable offense based on erroneous legal information and incorrect advice given to him by his counsel. The failure of Petitioner's counsel to educate himself about the statutory limitations of the JRAD pursuant to former 8 U.S.C. § 1251(b)(2) before advising Petitioner to plead guilty, deprived Petitioner of his right to effective assistance of counsel as guaranteed by the Sixth Amendment. Petitioner was prejudiced by the ineffective assistance of his counsel as he has been the subject of deportation proceedings for the past fourteen and a half years and has been ordered deported from the United States based on this conviction.

The writ of coram nobis is an unusual legal vehicle that courts will use to set aside a criminal judgment only "under circumstances compelling such action to achieve justice." *See Morgan,* 346 U.S. at 511, 74 S.Ct. at 252. According to the First Circuit, those circumstances include (1) an explanation of why a coram nobis petitioner did not earlier seek relief from the judgment, (2) a showing that the petitioner continues to suffer significant collateral consequences from the judgment, and (3) a demonstration that an error of the most fundamental character relevant to the plea decision occurred. *Hager v. U.S.,* 993 F.2d 4 (1st Cir.1993). I address each in turn.

As to the first requirement, Petitioner sought relief from the judgment as soon as he became aware of the immigration consequences of his guilty plea. He pursued forms of relief in the immigration court and in this Court as well. As to the second requirement, it is clear that Petitioner continues to suffer severe collateral consequences from the judgment. He has been ordered deported from the United States as all appeals before the Board of Immigration have been exhausted He has been married to a United States citizen for the past seventeen years and has two children who are also United States citizens. His deportation will cause a terrible psychological and financial hardship to his wife and two children, all of whom are United States citizens. He has no family left in Jordan. In fact, Petitioner had only lived there two years prior to coming to the United States to attend school. He has worked in the same job for the last sixteen years and is regarded as a highly respected employee. He has had no other criminal involvement since this case. As to the third requirement in *Hager,* Petitioner has demonstrated that his counsel's affirmative misrepresentations concerning

the deportation consequences of his plea constitute a fundamental error relevant to the plea decision.

## III.

The writ of audita querela is "constitutes the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." Black's Law Dictionary 120 (5th ed.1979). The writ of audita querela does not provide a purely equitable basis for relief independent of any legal defect in the underlying judgment. *United States v. Holder*, 936 F.2d 1, 3. Thus, the writ will not issue in the absence of a legal objection to a criminal conviction. Moreover, the First Circuit has also said that this writ will not issue unless that legal objection has arisen subsequent to a conviction, and which is not redressable pursuant to another post-conviction remedy. *Id.* at 5.

In Petitioner's case, the fact that he was provided false information by defense counsel regarding his plea agreement constitutes a legal infirmity in his conviction. He agreed to plead guilty with the understanding based on the representation of counsel that the JRAD would protect him against deportation. Counsel's mistake of law and neglect in failing to read and understand the statute constitutes ineffective assistance of counsel and is a legal basis upon which the writ should issue.

## IV.

For the reasons stated, there was a fundamental error underlying Petitioner's drug conviction, and therefore, the petition must be GRANTED.