Chief Judge EFFRON delivered the opinion of the Court.
Appellant filed a petition for extraordinary relief with the United States Navy-Marine Corps Court of Criminal Appeals. The court considered his petition and denied relief. Denedo v. United States, No. NMCCA 9900680 (N.M.Ct.Crim.App. Mar. 26, 2007). Appellant then filed the present appeal.
For a writ appeal, we consider the record developed at trial and on direct appeal. We also consider the materials filed by the parties in the course of the writ proceedings at the Court of Criminal Appeals and the appeal to our Court. Based on the foregoing, we consider whether a decision on the writ appeal can be reached on the record before us, or whether a more fully developed factual record is required prior to reaching a decision on the merits. See Section III.C.2., infra.
The Government contends that the Court of Criminal Appeals erred by not dismissing the petition on jurisdictional grounds, while Appellant contends that the court erred by not granting relief. Appellant challenges his court-martial conviction, asserting that his plea was not knowing or voluntary. Appellant contends that he expressly requested guidance of counsel on the immigration impact of his plea, that the advice provided by his attorney was defective, and that he relied upon ineffective assistance of counsel to his detriment in pleading guilty. He further asserts that the defect in counsel’s advice was not known to him and could not have been known to him until eight years after conviction when the United States Citizenship and Immigration Services (USCIS) first sought to deport him based on his court-martial conviction. Although judicial review of immigration proceedings, including any use therein of a court-martial conviction, is outside the jurisdiction of this Court, the providence of a guilty plea at a court-martial is subject to our review. See Section III.B., infra.
For the reasons set forth below, we conclude that the Court of Criminal Appeals properly rejected the Government’s motion to dismiss. We further conclude that a more *118 fully developed record is required prior to reaching a decision on the merits, and we remand the case for further consideration by the Court of Criminal Appeals.
Section I of this opinion outlines the procedural history of the present case. Section II discusses collateral review under the All Writs Act. Section III addresses Appellant’s request for relief.
I. PROCEDURAL HISTORY
Appellant, who was born in Nigeria, came to the United States in 1984. He enlisted in the Navy in 1989 and became a lawful permanent resident in 1990.
In 1998, the Government charged Appellant with conspiracy, larceny, and forgery, alleging that he assisted a civilian acquaintance in defrauding a community college. See Articles 81, 121, 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921, 923 (2000). Appellant, who was represented by civilian counsel and detailed military counsel, entered into a pretrial agreement with the convening authority. In exchange for Appellant’s agreement to enter a guilty plea, the convening authority agreed to reduce the charges. The convening authority also agreed to refer the case to a special court-martial, which, at that time, could not impose a sentence of confinement in excess of six months. See Article 19, UCMJ, 10 U.S.C. § 819 (1994), amended by National Defense Authorization Act for Fiscal Year 2000, Pub.L. No. 106-65, § 577, 113 Stat. 512, 625 (1999) (prospectively providing a twelve-month maximum for periods of confinement adjudged by special courts-martial).
Pursuant to the pretrial agreement, Appellant entered a plea of guilty at a special court-martial composed of a military judge sitting alone. In accordance with applicable law, the military judge conducted an inquiry into the providence of the plea. See Article 45, UCMJ, 10 U.S.C. § 845 (2000); Rule for Courts-Martial (R.C.M.) 910; United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969). After conducting the inquiry, the military judge concluded that the plea was provident. The military judge entered findings of guilty for the charges of conspiracy and larceny, as limited by the pretrial agreement. The record contains no reference to the subject of the deportation consequences of the pleas. Following the entry of findings, the military judge conducted a sentencing proceeding. On July 15, 1998, the military judge imposed a sentence that included three months confinement, reduction to grade E-l, and a bad-conduct discharge. The convening authority approved the sentence on March 7, 1999. The Navy-Marine Corps Court of Criminal Appeals affirmed on February 24, 2000. United States v. Denedo, No. NMCA 99-00680 (N.M.Ct.Crim.App. Feb. 24, 2000). Appellant did not seek further review in our Court. The Navy discharged Appellant on May 30, 2000.
On October 30, 2006, the Government, through USCIS, initiated proceedings to deport Appellant, citing his 1998 special court-martial conviction.[1] Subsequently, Appellant filed a petition for extraordinary relief with the Navy-Marine Corps Court of Criminal Appeals, requesting collateral review of his court-martial for alleged ineffective assistance of counsel and issuance of a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a) (2000). Appellant’s petition alleged that he specifically told his counsel during plea negotiations that “his primary concern and objective” was “to avoid the risk of deportation,” and that he was “far more concerned about deportation and being separated from his family, than the risk of going to jail.” According to Appellant’s petition, his counsel had assured him that “if he agreed to plead guilty at a special-court-martial he would avoid any risk of deportation.”
At the Court of Criminal Appeals, the Government filed a motion to dismiss on the grounds that the court lacked jurisdiction to consider the writ. The Court of Criminal *119 Appeals denied the Government’s motion to dismiss. Denedo, No. NMCCA 9900680. The court also considered and denied Appellant’s petition for extraordinary relief in a summary decision. Id.
Appellant filed a writ appeal with this Court. The Government, in response, reiterated its jurisdictional objection. In addition, the Government contended that Appellant had been provided with the effective assistance of counsel at his court-martial.
II. COLLATERAL REVIEW
A. BACKGROUND
In a court-martial of the type at issue in the present case, the findings and sentence approved by the convening authority are subject to direct review by the Court of Criminal Appeals of the military department concerned. Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2000); cf. Article 69, UCMJ, 10 U.S.C. § 869 (2000) (providing for review of other courts-martial in the Office of the Judge Advocate General). In addition to issues of law, the scope of review at the Court of Criminal Appeals extends to factual sufficiency and sentence appropriateness. See Article 66(c), UCMJ. The decisions of the Court of Criminal Appeals are subject to direct review in this Court on issues of law. Article 67(a), (c), UCMJ, 10 U.S.C. § 867(a), (c) (2000). Cases in which we have granted review or have otherwise provided relief are subject to direct review in the Supreme Court by writ of certiorari. Article 67a, UCMJ, 10 U.S.C. § 867a (2000); 28 U.S.C. § 1259 (2000).
A judgment as to the legality of the proceedings becomes final upon the completion of direct review by the Court of Criminal Appeals and (1) expiration of the time for filing a petition for review with this Court without such a filing (and without the case otherwise being under review at this Court); (2) rejection of a petition for review by this Court; or (3) completion of review by this Court, subject to requirements regarding potential review by the Supreme Court. Article 71(c)(1), UCMJ, 10 U.S.C. § 871(c)(1) (2000). In addition, various forms of executive action are required before the results of a court-martial become final. See Article 71(a), (b), (c)(2), UCMJ. Once such action is taken, Article 76, UCMJ, 10 U.S.C. § 876 (2000), provides, in pertinent part, that “[ojrders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States,” subject to certain explicit exceptions.
The results of courts-martial are subject to collateral review by courts outside the military justice system. See, e.g., Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) (plurality opinion) (habeas corpus in Article III courts); Schlesinger v. Councilman, 420 U.S. 738, 751, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) (noting that various forms of collateral review historically have been available for courts-martial convictions); United States ex rel. New v. Rumsfeld, 448 F.3d 403, 406 (D.C.Cir.2006) (federal question under 28 U.S.C. § 1331); Matias v. United States, 923 F.2d 821, 823, 825 (Fed. Cir.1990) (back pay litigation under the Tucker Act, 28 U.S.C. § 1491). Courts-martial also are subject to collateral review within the military justice system. See, e.g., Loving v. United States, 62 M.J. 235, 246 (C.A.A.F.2005); cf. Schlesinger, 420 U.S. at 753 n. 26, 95 S.Ct. 1300 (describing collateral review by extraordinary writs in the military justice system).
Appellant has requested collateral review under the All Writs Act, which provides that “all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.” 28 U.S.C. § 1651(a). The Act requires two separate determinations: first, whether the requested writ is “in aid of’ a court’s jurisdiction; and second, whether the requested writ is “necessary or appropriate.”
B. COLLATERAL REVIEW IN AID OF THE JURISDICTION OF THE COURTS OF CRIMINAL APPEALS
As the Supreme Court observed in Clinton v. Goldsmith, 526 U.S. 529, 534-35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), “al *120 though military appellate courts are among those empowered to issue extraordinary writs under the Act,” the Act confines a court to issuance of process in aid of “its existing statutory jurisdiction” and “does not enlarge that jurisdiction.” The Supreme Court noted that this Court “is not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments it has affirmed.” Id. at 536, 119 S.Ct. 1538. The Court added that “there is no source of continuing jurisdiction for the CAAF over all actions administering sentences that the CAAF at one time had the power to review.” Id.
When courts within the military justice system lack subject matter jurisdiction over an action, such as an administrative separation, they cannot invoke the All Writs Act to enlarge their jurisdiction to review the administrative action, even if it is based upon the results of a court-martial. Id. (noting that “Goldsmith’s court-martial sentence has not been changed; another military agency has simply taken independent action”). However, when a petitioner seeks collateral relief to modify an action that was taken within the subject matter jurisdiction of the military justice system, such as the findings or sentence of a court-martial, a writ that is necessary or appropriate may be issued under the All Writs Act “in aid of’ the court’s existing jurisdiction. Loving, 62 M. J. at 245-46 (citing 28 U.S.C. § 1651(a), and Goldsmith, 526 U.S. at 534,119 S.Ct. 1538).
The existing statutory jurisdiction of the Navy-Marine Corps Court of Criminal Appeals includes cases such as Appellant’s, in which the sentence extends to a punitive discharge. Article 66(b), UCMJ. On direct appeal, the Court of Criminal Appeals conducts a de novo review of the findings and sentence approved by the convening authority. Article 66(e), UCMJ (providing for review of matters of fact and law, as well as sentence appropriateness). Appellant’s request for coram nobis relief is limited to the findings and sentence of the court-martial reviewed by the Court of Criminal Appeals. He has raised a claim — ineffective assistance of counsel — that goes directly to the validity and integrity of the judgment rendered and affirmed. As such, the petition was “in aid of’ the existing jurisdiction of the Court of Criminal Appeals.
C. ARTICLE 76 AND COLLATERAL REVIEW
As noted in Section II.A,, supra, Article 76 addresses the completion of direct review, including executive action. Article 76 provides in pertinent part:
The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74), and the authority of the President.
In Schlesinger, 420 U.S. at 745, 95 S.Ct. 1300, the Supreme Court emphasized that Article 76 provides a prudential constraint on collateral review, not a jurisdictional limitation. Article 76 “does not expressly effect any change in the subject-matter jurisdiction of Article III courts.” Id. at 749, 95 S.Ct. 1300. The Article “only defines the point at which military court judgments become final and requires that they be given res judicata effect.” Id.
Similar considerations apply to the application of Article 76 within the military justice system. Although Schlesinger involved a collateral challenge to a pending court-martial in an Article III court, the Supreme Court’s analysis of the relationship between Article 76 and collateral review spe *121 cifieally cited a post-Article 76 coram nobis case reviewed by this Court. See Schlesinger, 420 U.S. at 758 n. 26, 95 S.Ct. 1300 (quoting United States v. Frischholz, 16 C. M.A. 150, 151, 36 C.M.R. 306, 307 (1966)); see also Noyd v. Bond, 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) (observing that this Court in Frischholz “properly rejected” the government’s argument that this Court lacked power to grant writs under the All Writs Act); cf. Goldsmith, 526 U.S. at 537 n. 11, 119 S.Ct. 1538 (referring to the discussion in Noyd, 395 U.S. at 693-99, 89 S.Ct. 1876, of the various avenues of relief available within the military justice system). In terms of timing, Article 76 serves as a prudential restraint on collateral review of courts-martial pending completion of direct review. When a coram nobis petition is considered after completion of direct review, finality of direct review enhances rather than diminishes consideration of a request for collateral relief. See, e.g., United States v. Morgan, 346 U.S. 502, 511-12, 74 S.Ct. 247, 98 L.Ed. 248 (1954); see Section III, infra. In terms of the scope of collateral review, the res judicata effect of Article 76 means that the decision on direct review will stand as final unless it fails to pass muster under the highly constrained standards applicable to review of final judgments, as discussed in the following sections.
D. THE AVAILABILITY OF OTHER REMEDIES AS A LIMITATION ON RELIEF UNDER THE ALL WRITS ACT
Because the All Writs Act serves as a residual authority, a writ is not “necessary or appropriate” under the statute if another adequate legal remedy is available. See Loving, 62 M.J at 247, 253-54 (discussing Carlisle v. United States, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996)). The determination of whether another remedy is adequate requires a contextual analysis. The possibility of executive clemency, for example, does not provide an adequate remedy because the exercise of clemency powers does not ensure judicial review of legal issues. See id. at 247. Likewise, a motion for a new trial is not a remedy if the request for extraordinary relief is based on developments occurring after the two-year deadline in Article 74, UCMJ, 10 U.S.C. § 874 (2000).
In view of the potential for collateral review by courts outside the military justice system, see Section II.A., supra, the question arises as to whether the availability of such review renders review of a coram nobis petition by the Court of Criminal Appeals unnecessary or inappropriate. In Loving, we observed that Article III courts would be unlikely to exercise jurisdiction over petitions for extraordinary relief during the period between completion of final legal review under Article 71(c) and finality of proceedings on direct review under Article 76 because of doctrines such as exhaustion and abstention, reflecting the primary role of courts within the military justice system in reviewing challenges to courts-martial. 62 M.J. at 248-51. In that context, we concluded that review was available under the All Writs Act to consider a court-martial conviction and sentence that was challenged during the period between completion of final legal review under Article 71(c) and the completion of final review, including executive actions, under Article 76. Id. at 256. In the present case, we consider the relationship between extraordinary writ proceedings within the military justice system and the possibility of Article III collateral review in a post-Article 76 setting, a matter that we did not address in Loving. See id. at 245 n. 61.
1. Constraints on collateral review by courts outside the military justice system
The power of courts outside the military justice system to engage in post-Article 76 collateral review is subject to constraints on the exercise of that power. See Loving, 62 M.J. at 248-49. A prominent theme running through the Supreme Court’s consideration of military justice cases on collateral review is that the system of courts established by Congress for the military justice system should serve as the primary mechanism for review of court-martial cases, and that the courts within the military justice system *122 should have an opportunity to consider challenges to court-martial proceedings prior to review by courts outside the military system. This theme is reflected in the Supreme Court’s emphasis on exhaustion of military remedies, as well as the Court’s focus on full and fair consideration by the courts within the military justice system.
a. Exhaustion of remedies
Under the exhaustion of remedies doctrine, courts outside the military justice system normally refrain from collateral review of courts-martial until all available military remedies are exhausted. The doctrine reflects the Supreme Court’s view of the pivotal role assigned by Congress to the courts in the military justice system. As the Court stated in Schlesinger, Congress enacted the UCMJ under its power to regulate the armed forces in an effort “to balance ... military necessities against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted.” 420 U.S. at 757-58, 95 S.Ct. 1300. To address those competing interests, “Congress created an integrated system of military courts and review procedures.” Id. at 758, 95 S.Ct. 1300.
The Supreme Court further observed that “implicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task.” Id. Underscoring the need for other courts to refrain from review until all military remedies have been exhausted, the Court stated “[w]e think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen’s constitutional rights.” Id.
As a general matter, courts outside the military justice system “will not entertain habeas petitions by military prisoners until all available military remedies have been exhausted.” Id. The exhaustion requirement is prudential rather than jurisdictional, and the Supreme Court did not preclude the possibility that the circumstances of a particular case might warrant consideration of a habeas petition by an Article III court prior to exhaustion. Id. at 761, 95 S.Ct. 1300.
b. Full and fair consideration
Even when remedies have been exhausted, the scope of collateral review outside the military justice system is constrained by the requirement to consider whether the military justice system has given full and fair consideration to the claims at issue. Burns, 346 U.S. at 142-46, 73 S.Ct. 1045. De novo review is appropriate only if the military justice system “manifestly refused to consider those claims.” Id. at 142, 73 S.Ct. 1045. As recently noted by the United States Court of Appeals for the District of Columbia Circuit in New, 448 F.3d at 407-08, Article III courts have utilized various standards in applying Burns. Compare, e.g., Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir.1990) (applying the deference test articulated by the United States Court of Appeals for the Fifth Circuit in Calley v. Callaway, 519 F.2d 184 (5th Cir.1975)), with Brosius v. Warden, 278 F.3d 239, 245 (3d Cir.2002) (applying the deference standard that the court would have used in habeas review of a state court conviction under 28 U.S.C. § 2254(d)). Irrespective of the different approaches used by the Article III courts, they are obligated to apply the exhaustion and review standards of Schlesinger and Bums when considering claims raised by a petitioner on collateral review.
2. The relationship between courts within and outside the military justice system with respect to collateral review
As previously described, courts within the military justice system conduct extraordinary writ review of courts-martial at a variety of stages, including after completion of direct review under Article 76. Although not prohibited from undertaking collateral review at the post-Article 76 stage without considering the availability of relief within the military justice system, a number of Article III courts have deferred action because of, or otherwise have taken into account, the availability of *123 post-Article 76 collateral review within the military justice system.
In Frischholz, 16 C.M.A. at 151, 36 C.M.R. at 307, the petitioner’s conviction became final under Article 76 after we denied his petition for direct review and he was dismissed from the Air Force. Five years later, he sought collateral relief from the United States District Court for the District of Columbia. Id. at 151, 36 C.M.R. at 307. The district court dismissed the petition, indicating that he should first seek review on the merits from this Court, a suggestion apparently initiated by the government. See id. at 151, 36 C.M.R. at 307.
When Frischholz followed the district court’s suggestion and filed a petition for a writ of error coram nobis with this Court, the government changed its position, contending that the case was outside this Court’s statutory jurisdiction under Article 67, and that we could not review a case after it became final under Article 76, UCMJ. See id. at 151, 36 C.M.R. at 307. We rejected the government’s position, concluding that we had jurisdiction to review the case under the All Writs Act, and we denied the application for relief on its merits. Id. at 152-53, 36 C.M.R. at 308-09.
The Supreme Court subsequently cited with approval the conclusion in Frischholz that Article 76 does not bar “subsequent attack in an appropriate forum” and that “[a]t best it provides finality only as to interpretations of military law” by this Court. See Schlesinger, 420 U.S. at 753 n. 26, 95 S.Ct. 1300 (quoting Frischholz, 16 C.M.A. at 151, 36 C.M.R. at 307); see also Noyd, 395 U.S. at 695 n. 7, 89 S.Ct. 1876 (citing Frischholz as an example of the availability of review by this Court under the All Writs Act).
In Del Prado v. United States, 23 C.M.A. 132, 133-34, 48 C.M.R. 748, 749-50 (1974) (collateral review where petitioner was not in confinement), and Garrett v. Lowe, 39 M.J. 293, 294 (C.M.A.1994) (collateral review where petitioner was in confinement), petitioners first sought relief in federal district court after their cases had become final under Article 76. In each case, the district courts withheld action pending collateral review in this Court, and in both cases we undertook review and granted relief. Del Prado, 23 C.M.A. at 134, 48 C.M.R. at 750; Garrett, 39 M.J. at 297.
More recently, a number of federal district courts have continued to rely upon the availability of collateral review in the military justice system to dispose of petitions seeking collateral relief. See, e.g., Tatum v. United States, No. RDB-06-2307, 2007 U.S. Dist. LEXIS 61947, at *12-*13, 2007 WL 2316275, at *6-*7 (D.Md. Aug. 7, 2007) (dismissing a request for post-Article 76 collateral relief on the grounds that the petitioner had not sought a writ of error coram nobis before this Court); Fricke v. Sec’y of the Navy, No. 03-3412-RDR, 2006 U.S. Dist. LEXIS 36548, at *9-*ll, 2006 WL 1580979, at *3-*5 (D.Kan. June 5, 2006) (relying on this Court’s summary disposition of petitioner’s post-Artiele 76 request for coram nobis relief); Mac-Lean v. United States, No 02-CV-2250-K (AJB), 2003 U.S. Dist. LEXIS 27219, at *13-*15 (S.D. Cal. June 6, 2003) (dismissing a petition for coram nobis relief for lack of jurisdiction and noting the availability of such relief before the Court of Criminal Appeals); Parker v. Tillery, 1998 U.S. Dist. LEXIS 8399, at *3-*5, 1998 WL 295574, at *2 (D.Kan. May 22, 1998) (post-Article 76 coram nobis review in the military justice system demonstrated full and fair review of claim).
The foregoing cases illustrate the care taken by Article III courts to ensure that an issue has been considered by the courts within the military justice system established by Congress prior to outside collateral review. These cases reflect the Supreme Court’s recognition that the military is an institution with distinct traditions and disciplinary concerns, and that Congress has given the military justice system a particular role to play in the maintenance of the traditions and discipline essential to the national defense, as balanced against the individual rights of servieemembers. See Section II.D.l., supra. Particularly where a collateral challenge requires interpretation of the UCMJ, the Manual for Courts-Martial, or military law pree *124 edents, courts outside the military justice system have endeavored to ensure that an issue has received full and fair consideration by courts within the military justice system before undertaking their own review.
3. Requirement to bring a coram nobis petition before the court that rendered the judgment
The likelihood that outside courts will defer taking action on a coram nobis petition pending consideration within the military justice system is increased by the well-recognized principle that a writ of error co-ram nobis should be brought before the court that rendered the judgment. See Loving, 62 M.J. at 251 (citing Steven J. Mulroy, The Safety Net: Applying Coram Nobis Law to Prevent the Execution of the Innocent, 11 Va. J. Soe. Pol’y & L. 1, 9 (2003); 2 Steven Childress & Martha Davis, Federal Standards of Review, § 13.01, at 13-4 (3d ed.1999)). This requirement reflects the importance of providing the court that made the decision with the opportunity to consider any subsequent developments and to correct any resulting error in its original judgment. See, e.g., Lowery v. McCaughtry, 954 F.2d 422, 422-23 (7th Cir.1992) (discussing the rationale underlying the principle and noting that “[e]oram nobis arose as a device to extend the period ... in which the judge who rendered a decision could reexamine his handiwork”). Many courts have disposed of writs of error coram nobis on this basis. See id. (noting that counsel in that case “conceded that she had not found even one decision in the history of the United States using eoram nobis to set aside a judgment rendered by another court”); see also United States v. Sawyer, 239 F.3d 31, 37 (1st Cir. 2001); Sinclair v. Louisiana, 679 F.2d 513, 514-15 (5th Cir.1982); Mustain v. Pearson, 592 F.2d 1018, 1021 (8th Cir.1979); Mac-Lean, 2003 U.S. Dist. LEXIS 27219, at *15; Carter v. Attorney General of the United States, 782 F.2d 138, 141 (10th Cir.1986).
In the military justice system, the trial court — the court-martial — does not have independent jurisdiction over a case after the military judge authenticates the record and the convening authority forwards the record after taking action. See R.C.M. 1102(d); R.C.M. 1107(f)(2); United States v. DuBay, 17 C.M.A. 147, 149, 37 C.M.R. 411, 412 (1967). Because the trial court is not available for collateral review under the UCMJ or the Manual for Courts-Martial, collateral review within the military justice system does not occur at the trial court level. See United States v. Murphy, 50 M.J. 4, 5-6 (C.A.A.F.1998).[2]
In that context, the Courts of Criminal Appeals, the first-level standing courts in the military justice system, provide an appropriate forum for consideration of coram nobis petitions regarding courts-martial. During the initial consideration of a case, such as the case now before us, they engage in de novo consideration of the record and expressly act on the findings and sentence. Article 66(c), UCMJ. With respect to collateral review of the present case, they are well-positioned to determine whether corrective action on the findings and sentence is warranted, including ordering any factfinding proceedings that may be necessary.
*125 4. The sequence of review in the present case
The Courts of Criminal Appeals have the authority, expertise, and case-specific knowledge appropriate to conduct the initial review of eoram nobis petitions, particularly in view of the principle that coram nobis petitions should be brought before the court that rendered the judgment. An Article III court, when asked to consider a court-martial conviction on an issue that has not been fully and fairly reviewed within the military justice system and has not been defaulted procedurally, is likely to defer action pending review by the court that approved the conviction. The sequence of review — collateral review in the military justice system prior to review by the Article III courts — reflects adherence to the concept that the primary responsibility for addressing challenges to courts-martial resides with the courts in the military justice system established by Congress.
Our conclusion — that the Court of Criminal Appeals provides an appropriate forum for coram nobis review — takes into account that the present case does not involve the propriety of jurisdiction to convene a court-martial. The present case involves the jurisdiction to review a case properly referred to a court-martial, unlike, for example, United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), which addressed the question of jurisdiction to try a person by court-martial. In Toth, the Supreme Court held that a court-martial may not be convened to try a former service-member who had no relationship with the military at the time of trial. Id. at 23, 76 S. Ct. 1. The present case involves a different question: whether a court-martial conviction, imposed on a servieemember while in military status, is subject to collateral review under the All Writs Act by the court that approved the conviction. When court-martial jurisdiction has been invoked properly at the time of trial, the jurisdiction of the Court of Criminal Appeals to review the ease does not depend on whether a person remains in the armed forces at the time of such review. See United States v. Davis, 63 M.J. 171, 176-77 (C.A.A.F.2006) (citing cases). In the present case, the court-martial that convicted Appellant had jurisdiction over both the person and the offense. The Court of Criminal Appeals had jurisdiction to review and approve the findings and sentence on direct review. As such, the Court of Criminal Appeals is an appropriate forum to receive and consider a writ of coram nobis that involves a collateral challenge to the court’s approval of the findings and sentence.
The Court of Criminal Appeals did not err by reviewing Appellant’s petition under the All Writs Act. We consider next whether Appellant’s petition meets the criteria for issuance of a writ of error coram nobis.
III. CORAM NOBIS
A writ of error coram nobis requests the court that imposed the judgment to consider exceptional circumstances, such as new facts or legal developments, that may change the result. See Loving, 62 M.J. at 252. Appellant’s coram nobis petition asked the Court of Criminal Appeals to take corrective action with respect to the findings and sentence that had been approved by the court on direct review. The decision of the Court of Criminal Appeals on a writ petition is subject to appellate review. See, e.g., Dettinger v. United States, 7 M.J. 216, 222-24 (C.M.A.1979); C.A.A.F.R. 4.(b)(2); R.C.M. 1204(a) Discussion.
Subsection A discusses the limitations on issuance of a coram nobis writ. Subsection B addresses the application of the threshold limitations to the circumstances of the present appeal. Subsection C considers whether a writ of error coram nobis is necessary or appropriate with respect to Appellant’s claim that he was denied his constitutional right to the effective assistance of counsel.
A. LIMITATIONS ON THE AVAILABILITY OF CORAM NOBIS
The Supreme Court, in Morgan, 346 U.S. at 511, 74 S.Ct. 247, observed that co-ram nobis permits “[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review,” but *126 only under very limited circumstances. Although a petition may be filed at any time without limitation, a petitioner must meet stringent threshold requirements: (1) the alleged error is of the most fundamental character; (2) no remedy other than coram nobis is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist. See id. at 512-13, 74 S.Ct. 247; Loving, 62 M.J. at 252-53; 28 James Wm. Moore et al., Moore’s Federal Practice § 672.02[2][c], at 672-43-46 (3d ed.2007); 3 Charles Alan Wright et ah, Federal Practice and Procedure: Criminal § 592 (3d ed.2004); 6 Wayne R. LaFave et ah, Criminal Procedure § 28.9(a), at 121-22 (2d ed.2004).
This Court has not previously identified the standards applicable to review of an ineffective assistance of counsel claim raised via a coram nobis petition. At a minimum, such standards must ensure that relief is limited to circumstances in which the requested writ is ‘“necessary or appropriate’ within the meaning of the All Writs Act.” Loving v. United States, 64 M.J. 132, 145 (C.A.A.F.2006). To implement that admonition, we adopt the two-tiered evaluation used by Article III courts for coram nobis review of ineffective assistance of counsel claims. In the first tier, the petitioner must satisfy the threshold requirements for a writ of co-ram nobis, as described above. If the petitioner does so, the court then analyzes, in the second tier, the ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., United States v. Bejacmar, 217 Fed.Appx. 919, 922-23 (11th Cir.2007) (petitioner did not satisfy coram nobis threshold requirements because he failed to explain why he did not include his ineffective of counsel claim in his prior request for habeas relief); Evola v. Attorney General of the United States, 190 Fed.Appx. 171, 174-76 (3d Cir.2006) (assuming petitioner met coram nobis threshold requirements, the claim failed to demonstrate prejudice under Strickland); United States v. Kwan, 407 F.3d 1005, 1017-18 (9th Cir.2005) (petitioner satisfied coram nobis threshold requirements and demonstrated that counsel’s erroneous advice on immigration consequences of guilty plea was both deficient and prejudicial); United States v. Castro, 26 F.3d 557, 559-63 (5th Cir.1994) (petitioner satisfied coram nobis threshold requirements and his claim that counsel faded to inform him, prior to guilty plea, of opportunity to request a judicial recommendation against deportation remanded to district court for determination of whether it constituted ineffective assistance of counsel). Because the claim arises under the All Writs Act, the petitioner must establish a clear and indisputable right to the requested relief. Cheney v. United States Dist. Court, 542 U.S. 367, 381, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004).
B. APPLICATION OF THE CORAM NOBIS THRESHOLD CRITERIA
Appellant’s writ petition meets the threshold criteria for coram nobis review. First, the alleged error, denial of the Sixth Amendment right to the effective assistance of counsel, is of the most fundamental character. See, e.g., Kwan, 407 F.3d at 1018; Castro, 26 F.3d at 559; cf. Morgan, 346 U.S. at 512-13, 74 S.Ct. 247 (eoram nobis appropriate to remedy denial of Sixth Amendment right to the assistance of counsel).
Second, there is no other adequate remedy, other than consideration of coram nobis by the Navy-Marine Corps Court of Criminal Appeals, to rectify the consequences of the alleged error. Appellant is not in custody, so he cannot obtain relief through a writ of habeas corpus. Morgan, 346 U.S. at 510, 74 S.Ct. 247 (rejecting the contention that the federal habeas corpus statute should be construed “to cover the entire field of remedies in the nature of coram nobis”).
*127 The pending deportation hearings do not provide Appellant with an adequate remedy. The proper forum for post-conviction review of a court-martial proceeding is a collateral review proceeding, see Section II.A, swpra, not an administrative proceeding in which the proposed agency action is a collateral consequence of the conviction. In an administrative forum addressing the collateral consequences of a conviction, such as deportation, the hearing officer and any subsequent reviewing court would be obligated to give res judicata effect to the court-martial conviction. See Section II.C., supra. Because Appellant’s claim did not receive full and fair consideration within the military justice system on direct review, an outside court is unlikely to review his writ petition prior to such consideration by the Court of Criminal Appeals, the first-level standing court that approved the findings and sentence at issue, as discussed supra in Section II.D.
Third, valid reasons exist for not seeking relief earlier. Appellant’s claim is that his counsel misinformed him as to the immigration consequences of his guilty plea and that avoiding deportation was the primary motivation for his guilty plea. His conviction became final when it was affirmed by the Court of Criminal Appeals on February 24, 2000, because Appellant did not seek further review. However, the immigration consequences did not become known to him until the Government initiated deportation proceedings in 2006 and Appellant sought coram nobis relief at the lower court within a few months of being notified of those proceedings.
Fourth, the new information (the immigration consequences) could not have been discovered through the exercise of reasonable diligence prior to the original judgment. Appellant retained civilian counsel to represent his interests in the court-martial proceedings. Assuming, for purposes of the threshold inquiry that his unrebutted allegations are true, he exercised reasonable diligence by retaining counsel, calling counsel’s attention to his concern about immigration consequences, and relying on counsel’s advice assuring him that he would not be deported on the basis of a special court-martial conviction.
Fifth, the writ does not seek to reevaluate previously considered evidence or legal issues. The appellate proceedings on direct review did not consider whether Appellant’s plea was compromised by misleading advice from counsel.
Sixth, the sentence has been served, but serious consequences persist. The Government, through USCIS, has initiated deportation proceedings that rely primarily on Appellant’s court-martial conviction as the basis for deportation.
The threshold criteria establish eligibility for review, not the propriety of the requested writ. We consider next whether the court below erred in denying relief with respect to Appellant’s ineffective assistance of counsel claim.
C. INEFFECTIVE ASSISTANCE OF COUNSEL
1. Applicable standards
A military accused is entitled under the Constitution and Article 27(b), UCMJ, 10 U.S.C. § 827(b) (2000), to the effective assistance of counsel. United States v. Scott, 24 M.J. 186, 187-88 (C.M.A. 1987) (citing Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). An accused making a claim of ineffective assistance “must surmount a very high hurdle.” United States v. Perez, 64 M.J. 239, 243 (C.A.A.F. 2006) (citation and quotation marks omitted). Courts reviewing such a claim “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The presumption of competence will not be overcome unless the accused demonstrates: first, a deficiency that is “so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment”; and second, that the accused was prejudiced by errors “so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” United States v. Moulton, 47 M.J. 227, 229 (C.A.A.F.1997) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052) (quotation *128 marks omitted). When challenging the effectiveness of counsel in a guilty plea case, the accused must also “show specifically that ‘there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ ” United States v. Alves, 53 M.J. 286, 289 (C.A.A.F.2000) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).
The burden of establishing the truth of factual matters relevant to the claim of ineffective assistance rests with the accused. See United States v. Polk, 32 M.J. 150, 153 (C.M.A.1991). If there is a factual dispute on a matter pertinent to the claim, the determination as to whether further factfinding will be ordered is resolved under United States v. Ginn, 47 M.J. 236 (C.A.A.F.1997).
2. Appellant’s Claim of Ineffective Assistance of Counsel
Appellant’s Sixth Amendment claim focuses on the advice he received from counsel prior to trial regarding the deportation consequences of a guilty plea. The declaration accompanying Appellant’s coram nobis petition states that: (1) he retained Mr. C as civilian counsel to represent him at his court-martial in 1998; (2) he told Mr. C that he was a permanent resident alien who had been living in the United States for fourteen years, that he intended to remain indefinitely, that his primary concern was to avoid the risk of deportation, and that he was more concerned about deportation and separation from his family than the risk of going to jail; (3) Mr. C advised Appellant that if he contested the charges, he would likely face a general court-martial, and that an acquittal would avoid deportation consequences; but a conviction at a general court-martial would constitute a felony that could be used as a basis for deportation; (4) Mr. C further advised him that a special court-martial would constitute a misdemeanor and could not be used as a basis for deportation; (5) Appellant entered into a pretrial agreement that provided for referral of charges to a special court-martial; and (6) Mr. C advised him of the specific words that he would have to use in the plea colloquy to ensure that the military judge did not reject the plea.
With respect to Appellant’s plea, we note that there are specialized requirements for a guilty plea in the military justice system. See Article 45, UCMJ. The military judge must engage in a specific dialogue with the accused, in which the accused addresses the voluntariness of the plea, describes the factual basis for guilt, and demonstrates an understanding of any pretrial agreement. R.C.M. 910(d)-(f). The record reflects that Appellant had considerable difficulty in acknowledging guilt during the military judge’s plea inquiry. The inquiry in Appellant’s case extended over a two-day period before the military judge finally accepted the plea.
Appellant was convicted, served his time in confinement, and returned to civilian life. On two occasions, he applied to the Immigration and Naturalization Service for naturalization. On both occasions, his application was rejected, citing his court-martial conviction. Each time, however, he was informed that the rejection was based on conduct within the five-year period prior to his application and was “without prejudice” to a future application. In neither instance did the Government suggest that he would face deportation.
In late 2006, however, six years after his conviction was affirmed on direct appeal, the Government initiated deportation proceedings against him. The deportation charges filed on October 30, 2006 and April 12, 2007 are based on his 1998 conviction by special court-martial.
Appellant’s declaration states that Mr. C’s advice regarding deportation consequences was the “decisive factor” in his decision to plead guilty, and that he would have insisted on going to trial had he been advised that a guilty plea could have resulted in deportation. Appellant contends that the deportation proceedings demonstrate that his counsel was ineffective because the very consequence that counsel assured him could be avoided by a guilty plea at a special court-martial is now being pursued by the Government.
*129 An attorney’s failure to advise an accused of potential deportation consequences of a guilty plea does not constitute deficient performance under Strickland. See, e.g., United States v. Fry, 322 F.3d 1198, 1200 (9th Cir.2003). An affirmative misrepresentation about such consequences, however, can constitute deficient performance, particularly when the client requests the information and identifies the issue as a significant factor in deciding how to plead. See, e.g., Kwan, 407 F.3d at 1015-16; United States v. Couto, 311 F.3d 179, 187-88 (2d Cir.2002); Qiao v. United States, No. 07 Civ. 3727(SHS), 98 Cr. 1484 (SHS), 2007 U.S. Dist. LEXIS 87934, at *8, 2007 WL 4105813, at *3 (S.D.N.Y. Nov. 15, 2007); United States v. Khalaf, 116 F.Supp.2d 210, 217 (D.Mass.1999); United States v. Mora-Gomez, 875 F.Supp. 1208, 1213 (ED.Va.1995). But see Commonwealth v. Padilla, No. 2006-SC-000321-DG, 2008 Ky LEXIS 3, at *7, 2008 WL 199818, at *3 (Ky. Jan. 24, 2008). Although occurring in a different context, the Supreme Court has noted the importance of immigration consequences to a defendant who is considering whether to plead guilty. INS v. St. Cyr, 533 U.S. 289, 322-23, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), superseded by statute on other grounds, REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231 (2005).
To show prejudice from ineffective assistance of counsel in a guilty plea ease, an accused must show “that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill, 474 U.S. at 59, 106 S.Ct. 366; Alves, 53 M.J. at 289. The focus is not on the outcome of a potential trial, but on “whether counsel’s constitutionally ineffective performance affected the outcome of the plea process.” Hill, 474 U.S. at 59, 106 S.Ct. 366; cf. id. at 60, 106 S.Ct. 366 (finding no prejudice where petitioner neither alleged that he would not have pleaded guilty absent counsel’s erroneous advice, nor any special circumstances “that might support the conclusion that he placed particular emphasis” on the subject of the erroneous advice).
Appellant, noting that the Government has not rebutted his declaration, asserts that we should treat the matters stated therein as accurate and decide the legal issue of whether his counsel was ineffective. See Ginn, 47 M.J. 236. In the current posture of the case, we decline to do so. The ease before us is a writ appeal of a decision from the Court of Criminal Appeals, not an original writ petition. At the Court of Criminal Appeals, the Government filed a motion to dismiss and reserved the right to file an answer addressing the substance of the petition if ordered to do so by the court. The court below denied the Government’s motion to dismiss, but also summarily denied Appellant’s petition on the merits without ordering a Government response. As a result, the Government did not have the opportunity before the Court of Criminal Appeals to obtain affidavits from the counsel who represented Appellant at trial and to submit such other matter as might have a bearing on the merits of Appellant’s claim.
The court below should not have dismissed Appellant’s petition without obtaining and assessing such information. The matter set forth in Appellant’s declaration, if true, warranted consideration under Strickland, particularly in light of other aspects of the trial and appellate record, including the nature of the providence inquiry, Appellant’s apparent belief that he could apply for naturalization without facing deportation consequences, and the subsequent deportation proceedings. Until the Government is required to respond on the merits, however, it would be inappropriate to render a judgment on the merits of his petition. At this stage, Appellant’s petition facially establishes a sufficient basis for coram nobis review, but a ruling on his petition would be premature without a Government response, consideration by the Court of Criminal Appeals as to whether counsel’s performance was deficient and, if so, whether Appellant was prejudiced thereby. See United States v. Castro, 26 F.3d at 563; Downs-Morgan v. United States, 765 F.2d 1534, 1541 — 42 (11th Cir.1985). In that regard, we note that the high hurdles established in Strickland and Hitt, both of which involved collateral review, establish the ap *130 propriate standards for assessing the Sixth Amendment claim in the present case, both in terms of allegations of deficiency and prejudice. See Khalaf, 116 F.Supp.2d at 216 and cases cited therein.
IV. DECISION
Accordingly, we remand Appellant’s petition to the United States Navy-Marine Corps Court of Criminal Appeals for further proceedings, where the Government will have the opportunity to obtain affidavits from defense counsel and submit such other matter as the court deems pertinent. The Court of Criminal Appeals will then determine whether the merits of Appellant’s petition can be resolved on the basis of the written submissions, or whether a factfinding hearing is required under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). The court will determine whether Appellant’s counsel rendered deficient performance and, if so, whether such deficiency prejudiced Appellant under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If prejudice is found, the court shall determine whether the requested relief should be granted.

. During the present writ appeal, USCIS filed an additional deportation charge, also based upon Appellant’s special court-martial conviction.

. Several Article III courts, citing Murphy, have noted the unavailability of collateral review at the trial court as a reason for concluding that court-martial convictions may not be reviewed under 28 U.S.C. § 2255 (providing for collateral review by "the court which imposed the sentence”). Witham v. United States, 355 F.3d 501, 505 (6th Cir.2004); Gilliam v. Bureau of Prisons, No. 99-1222, 2000 U.S.App. LEXIS 3684, at *3, 2000 WL 268491, at *1 (8th Cir. Mar 10, 2000) (unpublished); see Loving, 62 M.J. at 254-55. In Witham, the court considered the case under the general habeas statute, 28 U.S.C. § 2241, and denied relief on the grounds that three of the petitioner’s claims had been considered fully and fairly in the military justice system and the remaining two claims were procedurally defaulted. 355 F.3d at 506. In that context, the court did not address exhaustion of other remedies, such as review under the All Writs Act, 28 U.S.C. § 1651(a). In Gilliam, the court concluded that the district court had erred in treating a petition under § 2241 as a claim for relief under § 2255. 2000 U.S.App. LEXIS 3684, at *5-*6, 2000 WL 268491, at *2-*3. The court remanded the case to the district court for further proceedings, including consideration of whether the petitioner had exhausted his remedies in the military justice system. 2000 U.S.App. LEXIS 3684, at *7, 2000 WL 268491, at *3.