*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**In Re Victor E. LANDRY**
*Petitioner*

_____

**No. 200300851**

Decided: 22 April 2021

Review of Petition for Extraordinary Relief
in the Nature of a Writ of *Coram Nobis*

Military Judge:
Peter L. Fagan

Sentence adjudged 25 July 2002 by a general court-martial convened at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to E-1, confinement for 42 months,[1] forfeiture of all pay and allowances, and a bad-conduct discharge.

For Petitioner:
*Sean C. Timmons, Esq.*

_____

---

[1] The convening authority suspended confinement in excess of 18 months pursuant to a pretrial agreement.

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

On 25 July 2002, Petitioner was found guilty, in accordance with his pleas, of rape and indecent assault in violation of Articles 120 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920, 934 (1996).

On 23 November 2004, this Court affirmed the findings and sentence.[2] Petitioner did not seek further review by the Court of Appeals for the Armed Forces [CAAF]. On 17 February 2005, a notification of completion of appellate review was sent to Petitioner. He now petitions this Court for extraordinary relief over 15 years later, requesting that we set aside his convictions on grounds of ineffective assistance of his trial and appellate defense counsel. We find he has not met the threshold requirements to consider the merits of his petition.

## I. BACKGROUND

Petitioner pleaded guilty to indecently assaulting and then raping his shipmate, Fireman Apprentice [FA] Charlie,[3] while she was passed out and unable to consent due to intoxication by alcohol in November 2001. The misconduct followed a night of heavy drinking at an off-base club in Honolulu, Hawaii, which led to FA Charlie vomiting during a taxi ride back to the hotel room she and Petitioner were sharing with several other Sailors. While the other Sailors continued going to and from other bars, Petitioner stayed in the hotel room with FA Charlie and eventually went over to where she had passed out, kissed her on the lips, and asked her if she wanted to have sex with him. When she did not respond, he proceeded to touch her breasts and genitals, removed her shorts and underwear, and had sexual intercourse with her while she was still unresponsive. He then replaced her

———————————————

[2] *United States v. Landry*, No. 200300851 (N-M. Ct. Crim. App. Nov. 23, 2004) (unpublished).

[3] All names in this opinion, other than those of Petitioner, the judges, and counsel, are pseudonyms.

clothing. When FA Charlie awoke at 0400, she noticed that she had her clothes on, but her underwear was on backwards and bloodied.

After one of the other Sailors subsequently revealed Petitioner may have had sex with her, FA Charlie reported the incident a few days later, which led to an investigation by the Naval Criminal Investigative Service [NCIS]. Other Sailors staying in the hotel room told NCIS they saw Petitioner positioned near FA Charlie when she appeared passed out. He was seen at various points in the night with his face near her crotch; standing next to where she was lying down, appearing to be adjusting her shorts; and on top of her.

When NCIS interviewed Petitioner, he waived his rights and provided a signed, sworn statement detailing how, avoiding the detection of the other Sailors coming and going from the hotel room, he surreptitiously rubbed FA Charlie's vagina and clitoris while she was passed out, removed her shorts and underwear, and had vaginal sex with her. He stated he then put her shorts and underwear back on and "saw no response from [her] that would indicate she knew what had just happened."[4] He stated that while he had "no intentions of raping or violating" her, the "opportunity was there and after a point [he] could not help [him]self."[5]

In connection with pleading guilty at his court-martial pursuant to a pretrial agreement, Petitioner signed a stipulation of fact wherein he admitted rubbing FA Charlie's vagina and clitoris, removing her shorts and panties, and penetrating her vagina with his penis, all while she was unable to consent because she was intoxicated "to the extent that she was either passed out or asleep."[6] During the military judge's providence inquiry, Petitioner explained in detail how his actions satisfied the elements of the charged offenses of indecent assault and rape. He told the military judge there was no prior flirtation or other indication of consent from FA Charlie, who in any event was passed out due to intoxication and unresponsive at the time of the offenses.

After the military judge accepted Petitioner's guilty pleas, his trial defense counsel submitted evidence that based on his convictions Petitioner would likely have to register as a sex offender. His trial defense counsel argued that the military judge should take this consequence into considera-

---

[4] Pet., Encl. 9 (Pet'r's Stm't of Nov. 10, 2001), at 5.

[5] *Id.*

[6] Pros. Ex. 2 at 1-2.

tion during sentencing, along with the fact that Petitioner was a convicted felon as a result of his guilty pleas. Under the pretrial agreement, which Petitioner discussed with the military judge and agreed he had voluntarily entered into with the convening authority, 24 of the 42 months' confinement to which Petitioner was sentenced were suspended and later remitted. With "good-time" credit, he served less than 15 months' confinement for his felony-level convictions.

## II. DISCUSSION

Petitioner now asserts over a decade after the affirmance of his guilty pleas, convictions, and sentence that his trial and appellate defense counsel were ineffective. He alleges his trial defense counsel were ineffective for pressuring him and putting him under duress to plead guilty to crimes he did not commit, for failing to file a motion to suppress his confession to NCIS, and for not advising him of the defenses of consent and mistake of fact as to consent. He argues his appellate defense counsel were ineffective for failing to inform him of the possibility of raising ineffective assistance of counsel as an assertion of error in his appeal before this Court in 2004.

The All Writs Act requires us to determine whether the requested writ of *coram nobis* is in aid of our existing jurisdiction and is "necessary or appropriate."[7] In order for the writ to aid our existing jurisdiction, the case must fall within our limited statutory jurisdiction and implicate our subject-matter jurisdiction over it.[8] "To establish subject-matter jurisdiction, the harm alleged must have had the potential to directly affect the findings and sentence."[9] We conclude we have jurisdiction here, as Petitioner's approved sentence originally fell within our statutory jurisdiction under Article 66, UCMJ,[10] and the alleged ineffective assistance of counsel had the potential to directly affect the findings and sentence.

Notwithstanding our jurisdiction to consider his petition, a writ of *coram nobis* generally is available only in those limited, exceptional circumstances where "an error is based upon facts that were not apparent to the court

---

[7] *United States v. Brown*, __ M.J. __, No. 20-0288, 2021 CAAF LEXIS 164, *5 (C.A.A.F. Feb. 12, 2021).

[8] *Id.*

[9] *Id.* at *6.

[10] 10 U.S.C. § 866 (2004).

during the original consideration of the case and that may change the result."[11] A petition for such a writ must meet six "stringent threshold requirements" under *United States v. Denedo* before we will consider the merits of its claims:

> (1) the alleged error is of the most fundamental character;

> (2) no remedy other than *coram nobis* is available to rectify the consequences of the error;

> (3) valid reasons exist for not seeking relief earlier;

> (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment;

> (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and

> (6) the sentence has been served, but the consequences of the erroneous conviction persist.[12]

Petitioner has failed to establish two of these threshold requirements. First, he has not shown that valid reasons exist for not seeking relief earlier. He alleges he was unaware of the sex-offender reporting requirements with which he would have to comply upon his release from confinement.[13] However, Petitioner was well aware that he would likely be required to register as a sex offender on the day of his guilty pleas. His trial defense counsel placed the issue squarely before the military judge, submitting state registration requirements as evidence in mitigation during the presentencing hearing and discussing the issue in his sentencing argument. While Petitioner alleges he "never knew who [his] appellate counsel was or how to contact them or what [his] rights were," he signed a statement advising him of his appellate rights and told the military judge he understood them, admits that he "talked to several people," and was visited in the brig by one of his trial defense counsel.[14] He asserts that he learned about his sex-

---

[11] *Burleson v. United States*, No. 200700143, 2018 CCA LEXIS 87, *6 (N-M. Ct. Crim. App. Feb. 26, 2018) (unpublished).

[12] 66 M.J. 114, 126 (C.A.A.F. 2008).

[13] Pet'r's Aff. at 2 ("When released from the Brig I had to sign a document saying I would register as a sex offender or face further charges, something I was unaware of.").

[14] *Id.* at 3.

offender registration requirements when released from confinement, which occurred over a year prior to the completion of this Court's appellate review. Yet neither at that time nor when he later received his copy of this Court's opinion affirming his convictions and sentence did he take action to contact the Navy-Marine Corps Appellate Review Activity to discuss the issues he now seeks to raise, or to potentially appeal to CAAF this Court's decision.

Second, Petitioner provides no new information in the petition that could not have been discovered through the exercise of reasonable diligence prior to the original judgment. The issues that he notes with his interview by NCIS include that his statement was taken behind closed doors, without recording equipment, and was typed by the interviewing agent—after which Petitioner signed the statement and initialed each paragraph. He alleges his counsel failed to advise him of the defenses of consent and mistake of fact as to consent, while nevertheless now maintaining he did not have sex with FA Charlie. These and other concerns asserted by Petitioner were known at the time of his pleas and, absent some basis on which to find they either were not or could not have discovered with reasonable diligence, do not satisfy *Denedo*'s fourth prong. This is not a situation—as in *Denedo*—where Petitioner relied on counsel's faulty advice, only to learn much later due to newly discovered material that such advice was misinformed.[15]

As Petitioner correctly notes, a petition for a writ of *coram nobis* may be reviewed only in very limited circumstances.[16] Because Petitioner has not met all of the threshold requirements under *Denedo*, we do not address the merits of his claims.

## III. CONCLUSION

After careful consideration of Petitioner's filing, his Petition for Extraordinary Relief in the Nature of a Writ of *Coram Nobis* is **DENIED**.

---

[15] *See Denedo*, 66 M.J. at 127.

[16] *Id.* at 126. *See also United States v. Morgan*, 346 U.S. 502, 511 (1954).



FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court